## N. P. SAWYER v. JAMES NEWLAND.

Lamoillo,
*April,*
1837.

An entry upon land, under a deed, claiming title to the same, and cutting and selling timber from time to time, and exercising acts of ownership, is a sufficient possession to maintain an action of *trespass quare clausum fregit* against a stranger.

An imperfect division, evidenced by a plan, or by parol, acquiesced in by the proprietors, is good against a stranger.

A license to enter must be pleaded, or, if given in evidence under the general issue with notice, the plaintiff may recover for all the trespass not justified by the license.

Trespass, *quare clausum fregit.* The plaintiff declared against the defendant for entering, and cutting timber upon Lot, No. 26, in the third division of the original right of Jonathan Brewster, and Lot, No. 31, in the third division of the original right of Elihu Marvin—both in Hydepark. The trespass was alleged as of the 1st. day of May, 1828, with a *continuando* up to the 12th day of March, 1834. Plea—general issue, and trial, in the county court, by jury.

The plaintiff showed a deed to him from Matthew Franklin, dated 30th Oct. 1811, acknowledged the same day, conveying the right of Jonathan Brewster—also, a vendue deed from Veranus Lothrop, to plaintiff and John McDaniel, dated April 6, 1814, of the right of Elihu Marvin. These deeds were objected to by defendant, but admitted by the court, as showing color of title in plaintiff.

The plaintiff then offered certain records, as the records of the proprietors of Hydepark, which were objected to, but admitted by the court to be used, in connection with other testimony, to make out a division and draft,—also, a certified copy of the charter of Hydepark, containing the names of Jonathan Brewster and Elihu Marvin, which were admitted and read.

Plaintiff then offered a plan of Hydepark, which was not the original plan of the town, nor ever sanctioned by the proprietors, or the town, but which a former town clerk had procured to be copied from one in his office, which latter seemed to be equally unauthorized, except from the circumstances of its remaining in the office, and having been used by the inhabitants of the town for the purpose of examination and other ordinary purposes of a plan. It also appeared, that only a part of the

plan, made by the surveyor, who allotted the town, was in existence, or had been, for a great number of years.

The plaintiff then offered testimony, to prove a division in fact, and proved that the lands in said town had been known by lots, lines and corners, for more than forty years;—that the Marvin lot had been known by that name,—as, also, the Brewster lot, which had been considered a 200 acre lot—that the witnesses had frequently been on it, and that, for many years, it had been called the mill lot and Sawyer lot—indifferently; and, in the opinion of the witnesses, was lot No. 26; that defendant and Jesse B. Noyes built a saw-mill upon one corner of it, in, or about, the year 1825;—that the lot was, previously, wild and unsettled, lying in a remote part of the town. All the testimoconcurred in showing lot No. 26, in the third division, to belong to the right of Brewster, and No. 31, to the right of Marvin. Whereupon the court held the division and draft to be proved.

Plaintiff then offered a copy of a deed from himself to defendant,—having given notice to defendant to produce the original,— of three acres of land, to be taken from the third division of Jonathan Brewster, No. 26. This deed was objected to by defendant, but admitted by the court for the purposes of description. It was proved that the mill was erected on that part of the Brewster lot, conveyed by plaintiff to defendant and Jesse B. Noyes.

The plaintiff offered testimony tending to prove, that the defendant, previously to the first of May, 1828, had a license from him to enter upon lot No. 26, and take therefrom all the down or lying timber thereon, saw it into boards, rendering plaintiff a share of the produce, and that defendant did enter under said license, no particular limitation having been fixed to the license by the parties.

There was, also, testimony tending to prove that the defendant, within the time alleged in plaintiff's declaration, had cut standing pine trees on both lots, and other timber on the mill lot No. 26. The Marvin lot was proved to have been owned, at the commencement of this suit, jointly by plaintiff and John McDaniel, and that McDaniel died before the time of the trial.

It also appeared that plaintiff, in 1826, sold 50 acres of the Marvin lot to J. W. Smith—and had, at different times, given licenses to others to cut timber on both lots—lot No. 26 having been generally reputed to belong to plaintiff, and No. 31, to plaintiff and McDaniel.

The defendant requested the court to charge the jury that the plaintiff had failed to make out title to the lots in question—that he had not shown any prior seizin or possession, or any other title, which could enable him to recover in this action, and that it was incumbent upon the plaintiff to make out a title from the original proprietor, or a possessory title of 15 years or more, before the time of the alleged trespass ; or a prior possession or seizin in himself, or a tenancy under him.—Or that the defendant would be entitled to a verdict.

Lamoille, April, 1837.<br>Sawyer<br>v.<br>Newland.

The defendant further requested the court to charge the jury, that, if the defendant had a license, in fact, to enter upon the premises, this would render his entry legal, and the taking of an excess of timber, or an abuse of the license, would not render him a trespasser *ab initio*, and that, under that part of the case, they should find a verdict for the defendant.

The court declined to charge the jury, as requested by the defendant, but charged, as follows :

That, for the purpose of this action, a sufficient title had been shown, if the jury believed the testimony ;—that the licenses to take the fallen timber would not protect the defendant, in having felled and taken away standing timber ; but that they might return a verdict for defendant, if they found the license to include both standing and fallen timber ;—That, if they found for the plaintiff, they should give to the whole extent of the trespasses, proved to have been committed by defendant on lot No. 26, by felling and taking away standing timber, during the time mentioned in the declaration, and one half of the damages, so proved on lot No. 31.

Verdict and judgment for the plaintiff, and exceptions by defendant.

*J. Sawyer & H. P. Smith, for defendant.*

I. The vendue deed exhibited, for color of title, from Lothrop, is void, even for that purpose, without showing the regular proceedings of a vendue, which was not attempted.

The proprietors' records were determined to be bad—but admitted to aid in making out a practical division.

What is necessary to make a practical division ?

1. That the town has been allotted or run out by lines and corners, marked and numbered.

2. That this has been done for a long time, and that a plan has been made, or a book of the survey kept, and that, under

this, the land has been bought and sold. These things raise a presumption that the town has been allotted and drafted.

No surveyor's plan was offered, no evidence was given what the original plan was, or how far it corresponded with the one introduced.

II. The plaintiff did not make out any title to the premises, except a license, shown on his part, to Newland to take the fallen timber—in effect to commit a trespass.

The abuse of the license would not make the defendant a trespasser *ab initio*.

This doctrine has been uniformly sustained, as law, since the six carpenters' case, almost down to the present time. 2 Black. Rep. 1218. 1 Term Rep. 12. *Philips* v. *Brown*, 9 East. Rep. 298. Bigelow's Digest. 486, 487. Comyn's Digest. 517. 10 New York, Rep. 253. Yelverton's Rep. 86. 1 Salkeld's Rep. 221. 3 Wilson's Rep. 20. Cro. Jac. 147, 148. Buller's, N. P. 81. 1 Cowper's Rep. 414. 3 Black. Com. 14, 15. 2 Johnson's Rep. 191. 1 Swift's Dig. 516. 1 Chitty's Pleadings, 207. 12 N. Y. Rep. 408. 13 id. 414. 11 id. 388.

*S. A. Willard, for plaintiff.*

The case contains three points for the examination of the court.—

I. The identity of the lots, in which the trespasses are alleged to have been committed.—

II. The plaintiff's title thereto.—

III. The effect, upon the form of action, of a license to enter upon the land.

I. It was shown by a certified copy of the charter, that Jonathan Brewster and Elihu Marvin were original proprietors of the town of Hydepark.

It then became necessary to show a division draft of the town, to do which, the plaintiff offered in evidence what was called the proprietors' records. These were objected to, but admitted to be used in connection with other evidence, to make out a division draft. The ground of the objection does not appear, nor are the records referred to. Of course, no argument, for or against them, can avail any thing.

The best evidence, which the nature of the case will admit of, is always required. To prove a division draft of a town, among the proprietors, the records would be the best evidence. If no records can be found, witnesses may be called to prove the fact.

When a town has been allotted, and lines and corners made to the lots, after many years acquiescence, in the absence of all other proof, a practical division may be proved and relied on. In the present case, what was called the proprietors' records, together with the town records, were given in evidence, and a practical division proved by witnessess. And having resorted to all the modes of proof, it is presumed the court will sustain this part of the case.

II. Possession, under color and claim of title, at the time the trespasses were committed, is sufficient title on which to maintain this action against a stranger. And an entry upon land, under color and claim of title, and taking timber therefrom, and licensing other people so to do, at different times, and selling and conveying part of the lot, on which the entry is so made, and licenses so granted, constitute such a possession in the person making such entry, as will enable him to maintain this action against a stranger committing trespasses thereon. Such was the opinion of this court in *Doolittle* v. *Linsley*, 2 Aikens' Rep. 155.

Defendant and Noyes recognized plaintiff as the owner of the lot, when they purchased the mill privilege of him and took a deed of it in 1825.

Selling the land for a mill to be erected thereon, claiming the whole of the lot from which the same was sold, and selling timber at the same time and to the same persons, could not have been taken as mere acts of trespass in Sawyer, but the whole carried such an appearance of claim of ownership as would have made Sawyer liable to the owner of the land, in an action of ejectment, as soon as the timber was taken.

Defendant claimed no title but acted under a license from the plaintiff, and the plaintiff made the act his own by granting the license. If, by these acts, the plaintiff, on the 1st day of May, 1828, had acquired a possession of the land, sufficient to render him liable in ejectment to the rightful owner, (if there had been any other owner than himself), he certainly had sufficient title to enable him to maintain the action of trespass, against persons having no title nor claiming any.

In relation to lot No. 31,—the vendue deed from Lothrop to Sawyer and McDaniel; Sawyer and McDaniel's sale of part of said lot to Smith, in 1826; the licenses proved to have been given by Sawyer and McDaniel to other persons to enter upon the lot

Lamoille,
April,
1837.

Sawyer
v.
Nowland.

and take timber therefrom ;—all prove a possession under color and claim of title.

The defendant, by obtaining licenses of the plaintiff to enter upon the land, from time to time, to do certain acts authorized by the license, and committing trespasses at the same time, and pretending they were authorized by the license, admitted the plaintiff's title.

If obtaining licenses was not an admission of title, setting up the same as a defence to this suit, and relying thereon, as matter of justification of the breaking and entering, was certainly an admission of title.

By every rule of practice yet adopted in courts, the defendant, by justifying the act complained of, has been held to acknowledge or admit the plaintiff's title to the thing injured, and right to recover for the injury done, provided the justification was not made out, and certainly no reason can be given why the rule should be abandoned in this case.

It may be contended that it is only in special pleading where the rule contended for prevails ; that, it being one of the qualities of a special plea that it admit the facts stated in plaintiff's declaration, had the defendant pleaded the licenses specially, he must have admitted the plaintiff's title to the land, in order to set up the licenses in defence, but having pleaded the general issue, he can avail himself of them, without admitting the plaintiff's title.

The answer to all this is, that special pleading is only a rule of practice adopted by courts, and in cases where the act complained of by the plaintiff is not denied, but a right to do the same is claimed by virtue of a license coming from the plaintiff, courts have said that such claim of right shall be shown by a special plea, and this is done for the purpose of apprizing the plaintiff that he must bring no witnesses to prove his declaration, but must come prepared to resist the plea.

It is the fact pleaded, and not the mere manner of pleading it on paper, that gives to it the effect which usually follows. If the defendant plead the general issue first, and then the special matter, in due form, the operation is the same. If he plead the general issue, and give notice of the special matter, the effect is the same. If he attempt to prove it, and set it up in defence, or, in the latter case, if it come out in proof from the plaintiff's witnesses, and under the plaintiff's own showing, if the defend-

ant avails himself of it, he admits the title, if he does not admit it by obtaining the licenses in the first instance.   So that it matters not whether it be pleaded specially, or notice be given under the general issue, or it be given in evidence under the general issue.   For if the defendant set it up as a defence, and prove, or attempt to prove or avail himself of it, if proved by the plaintiff, it is a sufficient admission of title in the plaintiff to warrant a recovery in his favor, provided the defendant fail to make out his justification.

III. A license to enter upon land, for certain limited purposes, cannot be extended to any other purposes than those to which it was so limited, and if the person so licensed does any other act upon the land than such as was warranted by the license, and for which an action of trespass for breaking and entering could be maintained, provided no license had been given, the same form of action can be sustained, notwithstanding the license, and if the license be pleaded specially in such case, and the plaintiff rely on the abuse as a substantive cause of action, or distinct injury, for which he is seeking to recover compensation, he must new assign the excess or abuse, and show by the new assignment, that he brought his suit for other and different trespasses than those covered by the license. See 1 Chitty Pl. 516, 517, 547.   5 Wms. Cases, 805.   3 B. & A. Rep. 443.   1 Saund. Rep. 300, a.   2 id. 5.   *Hubbell* v. *Wheeler*, 2 Aik. Rep. 359.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This is an action of trespass *quare clausum fregit.*   The close, of which the plaintiff declares that he is seized, is described as Lot No. 26, in the division laid to the right of Jonathan Brewster, and Lot No. 31, in the third Division of the original right of Elihu Marvin, in Hydepark. To maintain this action, it became necessary for the plaintiff to shew either a title or a possession of the premises, and, that defendant had committed the injury complained of; and it also became necessary for the plaintiff to shew, that the lands, where the trespass was committed, had been severed or located to the rights, and set apart as the lots, numbers, and divisions described in his declaration.

In the action of trespass it is sufficient for a plaintiff to prove a possession of the *locus in quo.*   A mere prior occupancy, however recent, is sufficient against all, except those who can

Lamoille,
April,
1837.

Sawyer
v.
Newland.

prove an older and better title. The case of *Catteris* v. *Cow-per*, 4 Taun. Rep. 547, decides, that very slight · evidence of possession, is sufficient to enable the occupant to maintain the action against the wrong-doer. Possession implies an entry on the land, and, without title, such an entry is in itself a trespass on the real owner, yet, a series of such trespasses, continued for fifteen years, extinguishes the right of the real owner, and gives a title to the occupier. To constitute a possession, no doubt, there must be an exercise of acts of ownership on the land itself. It is not necessary that the land should be enclosed by a fence, as is sometimes understood. Indeed, the court, in the case of *Jackson* v. *Schoonmaker*, 2 Johns. Rep. 230, attached no importance to the fact, that land had been enclosed by a possession fence. In the case of *Ellicot et al.* v. *Pearl*, 10 Peters' Rep. 412, it appears that the circuit court were requested to instruct the jury, in effect, that possession must be taken either by an actual residence or enclosures. They instructed the jury that if they found the defendant had had possession by an actual residence, or by improvements, with the intention of taking possession, it was sufficient. This charge was sanctioned by the Supreme Court of the United States. In giving the opinion of the court, Justice Story remarks, that " the erec-" tion of a ‖ fence is nothing more than an act, presump-" tive of an intention to assert an ownership and possession over " the property. But there are many other acts, which are " equally evincive of such an intention of asserting such owner-" ship and possession, such as entering upon lands and making " improvements thereon, raising a crop of corn, felling and sell-" ing the trees thereon, &c. under a color of title." Similar to this, was the decision and language of the court in this State, in *Doolittle* v. *Linsley*, 2 Aikens' Rep. 155. The action was for a trespass on a timber or wood lot. The plaintiff only proved a claim of title, and that he got wood and timber on the the same for two years. The court instructed the jury, " that, " if the plaintiff had commenced the first possession upon the " lot, by cutting timber and wood thereon, (the same having " been previously surveyed, and the lines marked,) claiming " title thereto, and had continued that possession, by repeatedly " getting timber and wood from the lot, he could maintain " this action against a stranger." This charge was sanctioned by the supreme court, and they considered those acts done by the plaintiff, connected with his claim of right, as sufficient, if

continued for fifteen years, to give a title by the statute of limitations. It is to be noticed, that, in all these cases, great stress is laid on the claim of title. The same acts and doings might be considered as acts of trespass, or of possession and ownership, according to the claim set up by the person performing them. Cutting wood and timber from year to year, disclaiming any ownership, or perhaps without any claim of title, might be considered as nothing more than trespass, and no evidence of possession ; whereas, the same acts on a lot of land marked out, or the boundaries of which were designated by a survey or deed recorded, or by known and acknowledged metes and bounds, and under a claim of title, would be treated as unequivocal acts of possession. Cutting wood on one's own land, is an act of ownership, but on the land of another, a trespass. There can be no doubt, in the present case, but that the claim of title, on the part of the plaintiff, was an important item in the proof, as establishing the fact of his possession. The deed from Matthew Franklin to him, dated 30th October, 1811, shews that he had a claim of title to the right of Jonathan Brewster, as there is but one right of that proprietor in the town. The vendue deed from Lothrop to the plaintiff and McDaniel of the right of Elihu Marvin, shews a similar claim to that right, and it did not appear that any other person had ever claimed those rights, or set up any claim to the lots in question.

In the order of the trial, the plaintiff endeavored to shew that the *locus in quo* was severed to the divisions and rights as set forth in his declaration, and for this purpose, he introduced evidence to shew a division and draft. Without entering particularly into the evidence, it is sufficient to say, that we consider the testimony as properly admitted, and the division and draft as proved. It shews a division in fact, acquiesced in by all the proprietors, or, at least, not questioned by any. It is scarcely possible to prove a legal division in any of our old towns. Hence, all, which has ever been required, is to shew a division in fact, and this pre-supposes, that no evidence of a legal division exists. An imperfect division, evidenced by a plan, or even by parol, acquiesced in by the proprietors, is always held as a good division, binding on them, and clearly is good against strangers. The defendant in this case had recognized this division, so far as it respects No. 26, by accepting a deed of part of the same.

Considering that the plaintiff had shewn a claim of title to

the rights of Brewster and Marvin, and that the lots No. 26 and 31, were set apart to those rights, we must next inquire, whether the evidence established such a possession in him, as to enable him to maintain the action of trespass against a stranger, according to the principles already advanced. The court charged the jury, that, for the purposes of this action, a sufficient title had been shewn, if the jury believed the witnesses of the plaintiff. We coincide in the opinion with the court below, that the testimony on the part of the plaintiff was sufficient, but in reviewing their decision, it will not be expedient to separate the testimony of the plaintiff from that introduced by the defendant, but to examine the evidence in connection.

It appears that, previously to 1828, Newland, the defendant, had leave to enter upon lot No. 26, and take therefrom the fallen or down timber, saw the same on shares, and render to the plaintiff his share ; and that he did so enter and take the down pine timber. That of No. 31, the Marvin lot, claimed by plaintiff and McDaniel, they sold fifty acres to one Smith, although no deed was given, and Smith built a log house thereon, and then abandoned it ;—that plaintiff and McDaniel, who were generally reputed owners to both lots, licensed other persons to take timber on both lots ;—that the plaintiff sold a mill privilege on lot No. 26, to the defendant and one Noyes, and gave them permission, on the completion of the purchase, to take all the timber, except pine, which they might need about the erection of the mill dam, floom, &c., and they accordingly did so from time to time, and spruce timber had been cut and used in and about said mill dam. The defendant gave evidence, tending to prove another agreement, by which he had permission to take the standing pine timber, and that in pursuance thereof, both green and old timber were taken from both the lots, sawed into boards and divided ; that the boards were stuck up at the mill, marked "Sawyer," and " McDaniel and Sawyer," part of which had been removed by plaintiff, and a large part thus marked still remained. The claim of the defendant, that he took this timber by permission of the plaintiff, was at least, an acknowledgment that the plaintiff claimed, or had title to the lands in question. It is to be observed, that these acts of the defendant or Noyes, done by the permission of the plaintiff, are to be considered as though done by the plaintiff himself. These several acts, done and performed from time to time, from

Lamoille,
*April,*
1837.

Sawyer
*v.*
Newland.

before the year 1828, to the commencement of this suit, the plaintiff, claiming to be the owner of the lots, must be considered, as they ever have been, as acts of ownership and possession, on the part of the plaintiff;—so much so, as to have subjected him to an action of ejectment at the suit of the true owner, if there is any other owner but him and the representatives of McDaniel, and if continued for the period of fifteen years, would have given them an absolute title against every one. The case of *Doolittle* v. *Linsley*, to which we have already adverted, as well as the other cases, are decisive that the plaintiff had a sufficient possession to maintain this action against a stranger to the title. These are probably the principal questions involved in the controversy between the plaintiff and the defendant. There are, however, some other questions of minor importance, to which our attention has been called, and which must be noticed.

As it regards the license, it is to be observed, that, from the charge of the court, the jury must have found no license given to cut the green or standing timber. Nor can we see, from the case as presented, how any question in relation to the license, as a defence, could have arisen. No license was pleaded, but evidence, it appears, was received without objection, and the attention of the court was directed to it. The defendant could not, without a plea or notice, rely on the license as a justification. The evidence introduced by the plaintiff, on the subject, showed the acts done by the defendant, by plaintiff's permission, as acts of ownership done by himself. For what was done by his permission is considered as done by him. The defendant was not, on this account, entitled to rely on it as a justification, without a plea to that effect. Nor can the plaintiff contend, that the defendant was estopped to deny his title. A plea of justification admits a title, but if pleaded with the general issue, the plaintiff must still give evidence of his title. On the evidence, the court was requested to charge the jury, that, if the defendant had a license in part to enter upon the lot, his entry would be legal, and that, if he exceeded his authority, he would be liable for the excess in this action. The distinction between an authority in law, an abuse of which renders the person a trespasser *ab initio*, and an authority in fact, when such license is exceeded, and the person is liable only for the excess, is familiar. From the remarks already made in relation to the plea, as well as from the evidence detailed, it is obvious that no ques-

tion, arising on this distinction, is here presented. There is nothing by which we can learn, that the defendant entered for a lawful purpose, to wit, to cut the fallen timber, and then exceeded his permission; but on the contrary, the whole purpose and intent of the defendant may have been to cut the green timber, for any thing which appears in the case. But further, if the defendant had pleaded a license to enter, the plaintiff could have replied the excess, and recovered therefor, if the evidence was sufficient. And if he pleaded the general issue and gave notice of a license, the plaintiff could then have recovered for what the defendant had done beyond the limits of his authority. This doctrine was established in the case of *Hubbell* v. *Wheeler*, 2 Aikens' Rep. 359. The jury, as has been remarked, must have found no license to cut the timber; so that if the pleadings had assumed a shape to present these questions distinctly, the result must have been the same. From a view of the whole case, we are satisfied the plaintiff showed a sufficient possession of the *locus in quo*; that the defendant set up no justification in such a manner as that he could have availed himself of it, if the facts would have warranted it; and from the evidence and the finding of the jury, it is evident he was not justified in entering upon the land and cutting the timber, for which the suit was instituted.

The judgment of the county court is, therefore, affirmed.