ISRAEL P. BROWN *v.* ALBERTUS EDSON AND THE TOWN OF
PLYMOUTH.

An entry upon a tract of land under a survey bill, or record, giving a definite and certain extent to such land, and the occupation of a part of the land, if there be no evidence to limit and restrict the possession, will be regarded as extending the possession constructively over the entire tract included in the survey; but this constructive possession may be restricted by the acts and declarations of the occupant, showing that he does not make his claim of title equally extensive with the survey.

In this case, which was ejectment, the plaintiff claimed the land described in his declaration under a series of deeds from one R., who, without title from the original proprietors, surveyed, in 1787, a tract of land, which included the demanded premises, and placed his survey bill upon record, and in 1790 entered into possession of a portion of the tract so surveyed ; and it appeared, that R. and his grantees, including the plaintiff, had continued in possession of that part of the tract, of which possession was first taken, until the trial of this suit; but it appeared, that R., when he entered upon the lot, and during his occupancy, never claimed any part of the demanded premises, as part of that lot, that he designated to different individuals a line, as the boundary of his survey, which did not include the land in dispute, that he ever after claimed that line as his boundary, and that all the grantees of R., including the plaintiff, recognized that line as the boundary of the survey, until 1844; and it was held, that this limited the title, based upon constructive possession, to the line thus designated.

EJECTMENT for land in Plymouth. Plea, the general issue, and trial by jury, May Term, 1848,—REDFIELD, J., presiding.

On trial the plaintiff, to show title in himself to the land described in his declaration, gave in evidence the charter of Plymouth, dated July 6, 1761, by which it appeared, that one John Grimes was an original proprietor of said town. He then gave in evidence a deed from David Baldwin, administrator of the estate of Thomas Kendall, to Jonathan Wilder, dated April 24, 1786, and a deed from Jonathan Wilder to Luke Rice, dated March 6, 1787, conveying the undivided right of John Grimes in said Plymouth. He then gave in evidence a survey bill, duly recorded, dated September 12, 1787, of one hundred and fifteen acres upon the right of John Grimes, described by courses and distances; and also a series of deeds, conveying to the plaintiff the land described in the survey bill. But the plaintiff gave no evidence tending to prove, that

Thomas Kendall, or David Baldwin, ever owned the right of John
Grimes.   The land in controversy was situated at the southerly end
of the tract included within the survey.   The plaintiff farther gave
evidence tending to prove, that Luke Rice went into possession of
the land described in the survey bill about the year 1790, and that
he and those claiming under him, including the plaintiff, had ever
since continued in possession thereof, and that the land in contro-
versy was included within the survey.   The plaintiff claimed the
land in controversy as part of the tract included within the survey,
and the defendants claimed it as part of the " Minister's Right," in
Plymouth.   The land in controversy was wild until since October
1, 1844, at which time the selectmen of Plymouth leased it to the
defendant Edson, who soon after commenced cutting the timber
thereon : and no question was made, but what the defendants would
hold the land, if not included within the survey.

The defendants gave in evidence the survey and allotment of the
town of Plymouth, made between the years 1793 and 1796, which
tended to show, that the land in controversy was a part of the " Min-
ister's Right " in said town.   They then gave evidence tending to
prove, that Luke Rice, as early as 1793, claimed to a line, as the
southerly line of the land described in the survey bill, which did not
include any part of the land in controversy, and that Rice never
claimed any part of the land in controversy, and that those claiming
under Rice had at all times recognized said line, as the southern
boundary of the survey, until since 1840, when the plaintiff discov-
ered, that his easterly and westerly lines were not of the length
which they were described to be in the survey bill ; and that the
plaintiff then claimed a part of the land in controversy ; and that
this suit was commenced in October, 1846, and, after a verdict for
the plaintiff and a review entered by the defendants, the plaintiff,
at the November Term, 1847, of the county court obtained leave
of the court and amended his declaration, so as to include the whole
of the land in controversy.

The defendants requested the court to charge the jury, that if the
land in controversy was part of the land described in the survey
bill, yet if Luke Rice, as early as 1793, had claimed, as the south-
ern boundary of his land, the line to which the defendants now
claimed as their northern boundary, and Rice and those claiming

under him had from that time recognized said line as their southern boundary and acquiesced in it as such, until 1840, and made no claim farther south than that line, the plaintiff could not recover. But the court instructed the jury, that such a recognition and acquiescence would not preclude the plaintiff from claiming all the land, which Luke Rice originally surveyed, inasmuch as the land in controversy, during all the time of such recognition and acquiescence, had been in a wild state, and no one had been in actual possession of it; and that the plaintiff would have the right so to extend his land southerly to the south line of the original survey, until some one had been in the possession of said wild land for the term of fifteen years.

The jury returned a verdict for the plaintiff, for the whole of the land in controversy. Exceptions by defendants.

After verdict the defendants proposed to enter a review of the cause; but the court decided, that the defendants, having once reviewed, could not review again, although but part of the land now recovered was included in the declaration, at the time the review was entered. To this decision the defendants also excepted.

*S. Fullam* and *Tracy & Converse* for defendants.

In order to acquire title by constructive possession, which is all the plaintiff claims he had in this case, it is necessary, not only that he have actual possession of a part of the land covered by the deed, but that he *claim title* to the whole for at least fifteen years.   7 Vt. 100.   5 Vt. 209.   10 Vt. 33.   11 Vt. 129.   1 D. Ch. 92.   11 Vt. 521.   *Doolittle* v. *Linsley,* 2 Aik. 155.   A person withdrawing his claim to land, to which he has a title, loses his constructive possession, and the constructive possession of another may commence at the same time.   *Crowell* v. *Bebee,* 10 Vt. 33.   The presumption of law, that a person, who takes possession of a tract of land under a deed, *claims* all covered by the deed, is merely *prima facie,* liable to be rebutted by proof.   If the plaintiff, who has no title except by possession, did not possess or claim possession of the premises for fifteen years, he has acquired no title, whether his neglect were the result of mistake, or inadvertence, or any other cause.

If, as against an individual proprietor, the plaintiff, by his survey and previous possession of a part, had gained a prior occupancy of

the whole tract, which, by fifteen years continuance would become a title, such could not be the effect in this case, as it seems conceded, that the premises are included in the Minister's Right, against which the statute of limitations will not run. *Univ. of Vt.* v. *Reynolds et al.*, 3 Vt. 540. *Propagation Soc.* v. *Pawlet et al.*, 4 Pet. 480.

The defendants' application for a review was improperly refused. The defendants have not had a review of their cause, but only of part of it.

*Washburn & Marsh* for plaintiff.

1. The land in controversy was not in the *actual* possession of any one, unless of the plaintiff or his grantor, until October, 1844; and all the lands adjoining it upon the south were vacant lots. Hence there was no occasion, until that time, for the plaintiff, or his grantor, to point out with precision his southern boundary, or even to determine for himself where it was. The *law* had extended the constructive possession of Luke Rice, in 1790, to the true southern boundary of his lot,—which included the land in controversy; and until an adjoining proprietor should encroach upon his lot, or make claim of title to its southern portion, or some trespasser should intrude, it was useless for Rice, or for the plaintiff, to attempt to define, for himself, or for others, the point to which the *law* was thus extending his possession.

The plaintiff and his grantor have always *claimed all* that was included in the survey bill. The jury have *established* the fact, that the land in controversy was thus included. Hence, when Luke Rice entered into possession of a portion of the lot in 1790, the *law* extended his constructive possession over all the land included in the survey bill,—and consequently over the land in controversy. All that is assumed by the defendants, in their request to the court to charge, is, in effect, that Rice was *mistaken* in the extent, to which the law was thus extending his constructive possession, and that his grantees continued under the same mistake, until the claim made by the defendants afforded a motive for examination.

Neither the defendants, nor any third person, were injured by that mistake. It is clear that neither Rice, nor his grantees intended to *withdraw* their claim to any portion of the land covered by the sur-

Brown *v.* Edson et al.

vey bill;—because, before any claim was asserted by any person, examination had been made, and the error discovered. It would be unjust to give to the plaintiff's mistake an effect, which neither he nor his grantors *intended*, and which was not *known* to the defendants, and upon which neither the defendants, nor any other person, ever acted.

In *Crowell* v. *Bebee*, 10 Vt. 33, it was decided, that "an admission, by a party, of a mistaken boundary line for the true one has no effect upon his title;" and the *dictum* of the court in that case, as to its effect upon his *constructive possession*, must be taken with reference to the facts in that case.

2. The defendants were not entitled to the review claimed. If the action remained *the same* after the amendment, that it was before, they had had *one* review;—if it was made a different action by the amendment, they should have excepted to the allowance of that amendment; and not having done so, this court will presume, that the amendment was properly allowed,—and so the action remained the same.

The opinion of the court was delivered by

KELLOGG, J. Two questions are raised by the bill of exceptions; but only one was much relied upon in the argument, and that relates to the instructions given to the jury by the court below; and it is the only question necessary to be considered in disposing of the case. The plaintiff, at the trial, attempted to deduce a title to the land in question from John Grimes, who was shown to have been an original proprietor of the town of Plymouth. He, however, failed to establish such title, and was driven to the necessity of relying upon a possessory title. The case shows, that as early as 1787 Luke Rice caused a survey to be made of the lot in question, and that in 1790 he went into the possession of a portion of the land described in his survey bill, and that he and those claiming under him, including the plaintiff, have ever since possessed the same. No part, however, of the piece of land in controversy was ever in the actual possession of any one, until since 1840. It farther appears, that as early as 1793 Rice claimed to a line, as the southerly line of the land described in his survey bill, which did not include any part of the land in question, and that Rice never claimed any part of the

land in controversy; and that those claiming under Rice had at all times *recognized* that line, as the southern boundary of the land described in the survey bill, until since 1840; and that between the years 1793 and 1796 an allotment of the town was made, by which it appears, that the land in controversy was included in what is commonly called the Minister's Right.

Upon these facts the plaintiff claimed, and the county court, in their charge, evidently proceeded upon the supposition, that Rice, by his entry upon the land under his survey, acquired a *constructive* possession of *all* the land included in the survey, and that, by the continuance of that possession, he acquired a title to the land in controversy; for the plaintiff did not claim to have shown any title to this portion of the land, but a title resulting from a possession by *construction*.

It has been repeatedly held by this court, that if a person enters upon a tract of land under a deed, or pitch, giving a definite and certain extent to such land, his possession of any part will be *construed* as a possession of the whole, and as co-extensive with the claim of *title*. *Hall* v. *Fuller*, 7 Vt. 100. *Beach* v. *Sutton*, 5 Vt. 209. *Crowell* v. *Bebee*, 10 Vt. 33. But we know of no instance, in which a possession by *construction* has been held to extend beyond the *claim of title*. We readily grant, that an entry under a survey, like the one in the present case, and the occupation of a part of the land, if there be no evidence to limit and restrict the possession, will be regarded as extending the possession constructively, over the entire tract included in the survey. But we think, this constructive possession may be restricted by the acts and declarations of the occupant, showing that he does not make his claim of title co-extensive with the survey.

The fact, that Rice, when he entered upon the land and during his occupancy, never claimed any part of the land in controversy, that he pointed out a line, as the southern boundary of his survey, which did not include the land in dispute, that he ever after claimed that line, as his southern boundary, that the plaintiff, and all those under whom *he* claims, recognized this line as the southern boundary of the survey until 1844, in the judgment of the court limits the *constructive possession* to the line thus designated.

The county court seem to have attached no importance to these

facts, but to have considered, that inasmuch as the land in contro-versy had, during all the time, been in a wild state, and no one in the actual possession of it, the plaintiff had the right to extend his land south, as far as the south line of his original survey, until some one had been in the possession of the land in dispute for the term of fifteen years. This, we think, is manifestly erroneous. As the plaintiff had neither a paper title, nor a title by possession to the land in dispute, we do not see what right he had to extend his line, so as to embrace land in the possession of others, although that pos-session had not been continued for fifteen years.

The judgment of the county court is therefore reversed.