## DANIEL BUCK AND OTHERS *v.* REUBEN SQUIERS.

[Same Case, 22 Vt, 484.]

*Exceptions to charge of court. Constructive possession of land.*

When any question arises in regard to the charge of the county court,—which they are always bound to give according to the rules of law applicable to the case,—whether specifically requested so to do, or not, and the county court allow exceptions and spread the charge upon the record, it is competent for the party, against whom the case is decided, to remove the case into the supreme court upon the exceptions, or by writ of error, at his election, and the supreme court are bound to revise all questions made in regard to such charge, whether

---

[*] *White* v. *Miller*, 22 Vt. 380.

Buck et al. *v.* Squiers.

it was at the time excepted to, or not, unless, perhaps, in regard to some unintentional omission of the court to charge upon a point in the case, which would have been done, if the matter had been brought to the attention of the court at the proper time. That rule of the county court, by which exceptions to the charge to the jury are required to be taken before the jury retire, is one of practice merely, and cannot be regarded in the supreme court.

One may have the constructive possession of land, as well without written claim of title, as with it. Where the manner of occupying a portion of the land clearly indicates to every observer the extent of the claim of possession, every occasional entry of such possessor will be construed an act of possession, and not a bare trespass,—which it would be in one making no claim of title,—and this is all that is meant by constructive possession.

If, in an action of ejectment, the defendant claim title by possession, and it appear, that the fence of his adjoining land was so constructed and so far extended towards the disputed land, as to give notice to the public and to all concerned, that the defendant and his grantors claimed to exercise exclusive dominion over the disputed land, by extending their fence so as to include this land, whenever it should be convenient to complete the inclosure, and that it was left open for the time, for convenience of use, or because it was not then of sufficient importance to be inclosed, and this have been continued for fifteen years, it will be regarded as a sufficient possession to give title.

EJECTMENT for land in Chelsea. The land was described in the declaration, as follows;—" Beginning at a point in the centre of the branch, which runs near the house of Sereno Allen, where the east line of the old highway, laid out from Chelsea to Danville, intersects the centre of said branch in the westerly line of said Allen's land; thence up the centre of said branch, on the west line of said Allen's lands, so far that a line, drawn at right angles with the highway that passes by the house of said Squiers, will touch the southern extremity of the land of said Squiers, where he now lives; thence westerly, from the last mentioned point in the centre of said branch, in a line at right angles with said highway, to the centre of the same; thence southerly, in the centre of said highway, past the shop of said Squiers so far, that a line running easterly to the place of starting will form a right angle with said highway; thence from the last mentioned point in the centre of said highway to the place of beginning." Plea, the general issue, and trial by jury, June Term, 1850,—REDFIELD, J., presiding.

The principal question litigated at the trial was in regard to the

extent of the possession of the defendant, and those under whom he claimed title, of the land in dispute. The defendant relied first upon a deed of the land from the plaintiffs' ancestor, D. Azro A. Buck, to Daniel Wyman, dated September 10, 1813, in which the land conveyed was described, as follows :—" Beginning at the intersection of the road from Chelsea to Allen's saw mill and the branch on which the saw mill stands on the northerly side of said branch and nearly opposite my now dwelling house ; thence on the easterly side of said road until the said road strikes the bank of said branch; thence down said branch, in the middle of the channel, to the first mentioned bounds." The land in dispute was claimed by the plaintiff, as being in the highway, below the intersection of the side of the road and the side of the stream, and between the centre of the road and the centre of the stream ;—the defendant claimed, first, that it came within the limits of land described in his deed, and secondly, that it had been in the actual possession of himself, and those under whom he claims title, under a claim of title in fee, for more than fifteen years. The survey of this road, in 1798, which was the only survey found upon record, showed the road to have been laid four rods wide ; but it was so imperfect, that it was impossible to trace it. The road is more than four rods wide up to this point; and from this crossing of the branch it is less than four rods wide most of the way to the saw mill. The land in dispute was a low piece of land, which had been partly covered with water for many years ; and the testimony varied, as to whether, at the date of the deed from Buck to Wyman, the road and the stream intersected above or below this land; but all the testimony showed, that this land had not been inclosed by the defendant, or by those under whom he claimed title, or in any way occupied, except by passing and repassing over it, and sometimes depositing wood and other heavy materials upon it. It also appeared, that north of this point a dwelling house was erected some thirty years since, and a door yard fence erected soon after, and about twenty years before this suit was commenced, and this fence extended north and south, from time to time, in such a direction, as that, if extended to the branch, it would have included this land within the defendant's inclosure. But how far this fence was extended, and how near it came to the land in dispute did not very definitely appear.

The court charged the jury, that the defendant, in order to prevail, must show either that the land in dispute came within the description of boundaries in the deed from Buck to Wyman, or that he, and those from whom he derived title had been in possession of the land, claiming title to it, for more than fifteen years, and that, in default of this, the plaintiffs must recover upon the acknowledged title of their ancestor, whether he had asserted any title to it, or not, as confessedly the defendant was in possession of the land at the commencement of this suit, and it was not claimed, that any other person had acquired title to it, unless the defendant had. In reference to the extent of the boundaries in the deed from Buck to Wyman, such instructions were given to the jury, as the plaintiffs claimed.* As to the matter of possession, the jury were told, that an inclosure of the land, or a constant occupation, was not necessary; but it must either be this, or such a constructive possession, as would give notice to others, that the defendant, or his grantors, were exercising exclusive dominion over the premises ; that if the fence was so constructed, and so far extended towards the disputed land, as to give notice to the public and to all concerned, that the defendant and his grantors claimed to exercise exclusive dominion over the disputed land, by extending the fence so as to include this land, whenever it should be convenient to complete his inclosure, and that it was left open for the time for convenience of use, or because it was not then of sufficient importance to be inclosed, the jury would still regard this as sufficient possession ; but that, if the fence was but for a short distance, comparatively, and showing on its very face more like an intrusion into the highway, than a claim of the line of the land, it could not avail the plaintiff, as tending to establish a constructive possession of this land,—so that the effect of the fence would depend very much upon its extent, being of more and more importance as it extended, and especially as it approached very nearly to the land in dispute, more than fifteen years before this suit was brought, and had been constantly so maintained until the commencement of the suit.

In the progress of the trial the defendant offered in evidence the

* See the report of this case; 22 Vt. 484.

deposition of Daniel Buck, which was objected to by the plaintiffs and admitted by the court; to which decision the plaintiffs excepted. And no exceptions were taken to the charge, at the time, by either party. But after the jury had returned a verdict for the defendant, the plaintiffs applied to the court to allow a bill of exceptions, in order to enable them to save the question in regard to the admissibility of Buck's deposition and in regard to the correctness of the instructions to the jury in regard to the fence; and a bill of exceptions was accordingly drawn and allowed, stating these facts, and detailing the charge as above given.

*Hebard & Martin* and *A. P. Hunton* for plaintiffs.

The charge of the court being stated in the bill of exceptions, it is proper for this court to consider it, and, if any error is found, to reverse the judgment; *Steel* v. *Bates,* 2 Aik. 338; although questions not decided in the county court will not be heard in this court; *Bebee* v. *Steele,* 2 Vt. 314. *Onion* v. *Fullerton,* 17 Vt. 359.

The charge as to the fence and constructive possession is erroneous. It is in respect to the defendant's acquiring title to land beyond the boundaries of the land conveyed by the deed, which, we believe, can only be done by actual possession. *Hubbard* v. *Austin,* 11 Vt. 129. *Ralph* v. *Bayley,* 11 Vt. 521. And we submit, that fences cannot be so built, or extended in such direction, as to subject the builder of them to an action of ejectment for land contiguous to that inclosed, or enable him to maintain an action against a wrong doer for an entry upon such land,—and, as a consequence, that no title to land would be acquired in that way. Nor would the building of the fence tend in any way to show a claim of title to land beyond the inclosure. The law will not presume a man intends to inclose land, to which he has no title. There can be no constructive possession of land, without color of title. *Doolittle* v. *Linsley,* 2 Aik. 155.

*L. B. Vilas* and *C. W. Clarke,* for defendant, insisted, that the only exception, taken and allowed in the case, related to the deposition of Buck; and that in that respect there was no error in the decision of the county court.

Buck et al. *v.* Squiers.

The opinion of the court was delivered by

REDFIELD, J.   A question is made, whether the plaintiff in this case is at liberty to raise any question in this court, to the decision of which he did not except in the county court.   We think, where any question arises in regard to the charge of the court,—which they are always bound to give according to the rules of law applicable to the case,—whether specifically requested so to do, or not, and the court below allow exceptions and spread the charge upon the record, it is competent for the party, against whom the case is decided, to remove the case into this court, upon the exceptions, or by writ of error, at his election, and that this court are bound to revise all questions made in regard to such charge, whether it was at the time excepted to, or not.   That rule of the county court, by which exceptions to the charge to the jury are required to be taken before the jury retires, is one of practice merely, and cannot be regarded in this court.

But this court has often held, that where a party omits to raise any question in the course of a trial, which might be obviated, if taken at the time, like a variance between the proof of the issue, and many others, the party is to be regarded as having waived such exception.   And the same rule ought perhaps to be applied to any unintentional omission of the court to charge upon a point in the case, which the court would of course have done, if the matter had been brought to the attention of the court at the proper time.

But where it appears, upon the charge as given, that it was not according to law, a new trial will always be granted.   But in the present case we have not been able to satisfy ourselves, that any such error did intervene.   The instructions to the jury, in regard to the fence, seem to this court wholly unobjectionable.   We suppose one may have the constructive possession of land, as well without written claim of title, as with it.   Every possession of land, upon which there are no permanent erections, either of buildings, or fence, must be more or less constructive, unless for some purpose the occupancy is constant, which is not often the fact in such cases.   One might have a lane open into his door yard, or pasture, and still be as fully in the constructive possession of it, although he might not in fact actually go upon the land ten times in the year, and not remain in the actual occupancy of the land one day in the three hun-

dred and sixty five, as if he had erected fences entirely around it. So, too, if one's fence is in such a form, as to clearly indicate, that, when completed, it will include a portion of wood land, which the party now only uses for making sugar, or cutting wood, the person must be regarded as in the constructive possession of the whole lot, although there be no paper claim, or color of title.

Color of title, it has often been held, need not be a technical deed of the land, and is important to give constructive possession of land only, as being definite, not subject to variation from time to time, and something, also, which, it is presumed, any adverse claimant to the land may ascertain upon inquiry, and which therefore he is presumed to know. But where the manner of occupying a portion of the land clearly indicates to every observer the extent of one's claim of possession, every occasional entry of such possessor will be construed an act of possession, and not a bare trespass,—which it would be in one making no claim of title; and this is all that is meant by constructive possession.                    Judgment affirmed.