JASON W. RICE *v.* FRANK D. CHASE.

JASON W. RICE *v.* FRANK D. CHASE AND HOMER LORD.

May Term, 1902.

Present: ROWELL, C. J., MUNSON, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed August 21, 1902.

*Trespass—Constructive possession—Title.*

Occupation of a part, in order to be extended by construction to the whole of a piece of real estate, must be under a claim of title to the whole, evidenced by some writing that affords color of title and defines the limits, or by obvious boundaries upon the land itself.

Proof that the plaintiff in trespass is a "lineal descendant" of one of the original proprietors of the town in which the land in question lies, is not alone sufficient evidence of his title, even if it be presumed that no allotment has been made.

TRESPASS QUARE CLAUSUM. Plea, the general issue. Heard on a referee's report and the defendant's exceptions thereto, at the September Term, 1901, Windham County, Stafford, J., presiding. Exceptions overruled, *pro forma,* and judgment, *pro forma,* for the plaintiff. The defendants excepted.

*Haskins & Schwenk* for the defendants.

In trespass q. c. f. the plaintiff must have either title or possession. *Oatman* v. *Fowler,* 43 Vt. 462. This plaintiff had neither. The quit claim deed from Burnap conveyed nothing as he had nothing to convey. Both parties knew that the grantor had no title. It did not even give color of title. *Atkinson* v. *Patterson,* 46 Vt. 750; *Wright* v. *Tichenor,* 104 Ind. 185; *McKeighan* v. *Hopkins,* 14 Neb. 361; *Saunders* v. *Silvery,* 55 Tex. 217; *McCall* v. *Neely,* 3 Watts 72; *Saxton* v. *Hunt,* 20 N. J. L. 487; *Crispin* v. *Hannavan,* 50 Mo. 536.

The survey made by plaintiff was not an act of possession. *Paine* v. *Hutchins,* 49 Vt. 314; *Oatman* v. *Fowler, supra.* The cutting of small trees in 1885 and 1886 were not acts of possession. *Kidder* v. *Kennedy,* 43 Vt. 717; *Wells* v. *Austin,* 59 Vt. 157; *Land Co.* v. *Leonard,* 20 Fed. Rep. 881. Payment of the taxes were not acts of possession. *Reed* v. *Field,* 15 Vt. 672; *Langdon* v. *Templeton,* 66 Vt. 173; *Paine* v. *Hutchins, supra; Tillotson* v. *Pritchard,* 60 Vt. 94.

The defendant Chase was in possession under color of title before the plaintiff took his deed, and this will prevent a recovery. 26 Am. & Eng. Ency. 32; 137 Mass. 584.

The plaintiff would only be entitled to nominal damages. Sedg. Dam. 69; *Stratton* v. *Lyon,* 53 Vt. 641; *Gilbert* v. *Kennedy,* 22 Mich. 5.

The evidence that plaintiff was a lineal descendant of one of the original proprietors of the town, was inadmissible. No privity of title was shown. It did not appear that the town was ever organized under this charter, or that the party named ever had any interest in any land in Somerset.

*Charles S. Chase* and *Batchelder & Bates* for the plaintiff.

The plaintiff can recover on the strength of his title under the Burnap deed. The defendant had no title to the land, and as shown by the report, he had actual notice of

plaintiff's claim of title before he began cutting. *Blaisdell* v. *Stevens,* 16 Vt. 179. The plaintiff put the Burnap deed on record and by his acts of cutting gained complete possession to the boundaries of his deed. *Hunt* v. *Taylor,* 22 Vt. 556; *Webb* v. *Richardson,* 42 Vt. 465; *Hodges* v. *Eddy,* 38 Vt: 327. The plaintiff being in possession under color of title, can maintain this action. *Dibble* v. *River Co.,* 69 Vt. 482.

As lineal descendant of Ephriam Rice, an original proprietor, plaintiff has title against everyone except the other heirs, and can recover full damages. *Park* v. *Pratt,* 38 Vt. 545; *Robinson* v. *Sherwin,* 36 Vt. 69; *House* v. *Fuller,* 12 Vt. 172; *Hibbard* v. *Foster,* 24 Vt. 542; *Bigelow* v. *Rising,* 42 Vt. 678.

STAFFORD, J.   These are actions of trespass on the freehold for cutting and removing timber. The *locus* is a tract of wild unenclosed mountain land in Somerset. Some years ago Rice and Burnap, two old residents of the town familiar with lots and lines in that region, came to the conclusion that here was territory that had never been appropriated, nor covered by any deed, and "feeling," as the referee explains, "that such a condition of affairs ought not to exist, they agreed between themselves to appropriate said land and annex it to their own domain." First they made a survey, so that the land might be described by course and distance; and then Burnap executed and delivered a quit claim deed of all his right and title therein to Rice, and Rice had the deed recorded. They were to own the land in equal shares. The referee has described the course of the survey, but it is unnecessary to recite it here. It was followed in making the deed, except in one important respect, more fully noticed hereafter, viz.: the western boundary, where a more general description was substituted for the exact courses and distances. The line they ran took in about three hundred acres.

It included one piece known as the "Wheeler Lot," which probably had a live owner, for they immediately abandoned all claim thereto. It followed to some extent old marked lines. For quite a distance it coincided with the town line, and over a part of the course through the unmarked forest they blazed a new line for themselves. All this was in August, 1885. The next fall Rice entered and cut a few trees at three different places as acts of occupation under his color of title from Burnap,—in one place six or eight small trees such as he could handle, leaving them on the ground; in another, half a dozen spruces, four to six inches through. The next year he cut a few in another place. These cuttings were his only acts of occupation, before suit brought, that are found with certainty; and the referee reports that "none of them were such as to attract attention unless one came upon them accidentally." Rice is the plaintiff in these actions.

The defendant Chase claimed to own a tract called the "Scott Land," or "Scott No. 5," and that it covered the disputed territory. He introduced before the referee some eight deeds running back to 1793. The earlier records of the town are lost. In 1890, '91 and '92, he had the timber in question cut and drawn away. The other defendant was his employee.

The question is, can the actions be maintained?

It is well understood that one in possession of land, although without other evidence of right, may have his action of trespass against a stranger to the title who disturbs his possession. *Sawyer* v. *Newland,* 9 Vt. 383, 389; *McGrady* v. *Miller,* 14 Vt. 128; *Hough* v. *Patrick,* 26 Vt. 435; *Perkins* v. *Blood,* 36 Vt. 273; *Hughes* v. *Graves,* 39 Vt. 359, 94 Am. Dec. 331. Such possession may be actual or constructive. There is a constructive possession which one may have without having actual possession of any part of the premises. But, to have that, one must be the real owner. *Robinson* v. *Douglass,*

2 Aik. 368; *Harris* v. *Haynes,* 34 Vt. 227; *Chesley* v. *Brockway,* 34 Vt. 550; *Hosford* v. *Whitcomb,* 56 Vt. at p. 653.

The constructive possession of which we are now speaking is an actual possession of a part in such circumstances that the law looks upon it as covering the whole. *Spear* v. *Ralph,* 14 Vt. 400; *Hodges* v. *Eddy,* 38 Vt. 327, 344-346.

In order that an actual occupation of a part should be a legal occupation of the whole, it is necessary that the occupant should be acting under a claim to the whole, and that the whole should be so well defined that his acts, however partial, have manifest reference to the whole. *Doolittle* v. *Linsley,* 2 Aik. 155; *Beach* v. *Sutton,* 5 Vt. 209; *Hull* v. *Fuller,* 7 Vt. 100; *Crowell* v. *Bebee,* 10 Vt. 33, 33 Am. Dec. 172; *Brown* v. *Edson,* 22 Vt. 357; *Chandler* v. *Spear,* 22 Vt. 389, 404-406; *Buck* v. *Squiers,* 23 Vt. 498; *Paine* v. *Hutchins,* 49 Vt. 314; *Hosford* v. *Whitcomb,* 56 Vt. 651.

The occupant may act without any sign or claim of title in writing; and then his boundary must be plainly marked upon the land itself. *Buck* v. *Squiers,* 23 Vt. 498; *Swift* v. *Gage,* 26 Vt. 224, 228; *Wood* v. *Willard,* 37 Vt. 377, 86 Am. Dec. 716; *Hodges* v. *Eddy,* 38 Vt. 346; *Soule* v. *Barlow,* 49 Vt. 329, 339; *Wells* v. *Austin,* 59 Vt. 157, 167, 10 Atl. 405; *Langdon* v. *Templeton,* 66 Vt. 179, 180, 28 Atl. 866.

Or he may act under some writing which defines the limits of his claim; and then, if the writing is of the requisite character, although insufficient in law, he is said to have color of title. *Aldrich* v. *Griffith,* 66 Vt. 390, 399-401, 29 Atl. 376.

The writing need not be a deed. *Hunt* v. *Taylor,* 22 Vt. 556. But, if it be a deed, and especially if it be spread upon the record, his acts of occupation must be referred to his deed, and are limited by it. *Hull* v. *Fuller,* 7 Vt. at p. 108; *Shedd* v. *Powers,* 28 Vt. 652; *Webb* v. *Richardson,* 42 Vt. 465;

*Aldrich* v. *Griffith,* 66 Vt. 390; *Davenport* v. *Newton,* 71 Vt. 11, 16; and most of the authorities already cited.

To apply these principles to the present case: The plaintiff claims to have had constructive possession of the land where the alleged trespasses were committed, by virtue of his own prior acts of occupation under the deed from Burnap to himself. Assuming, without deciding, that his acts were acts of occupation, what is the boundary given by his deed? The western is the one involved here, and is described as follows: "thence southerly, bounding partly on said public lot and partly on a tract of land called Scott land and land of Estey Organ Company, about five hundred and sixty rods, to the south line of the Gould lot." The defendant had at least color of title to the Scott land, and was acting under it. If the acts complained of were committed upon the Scott land, they were not committed upon the land covered by the plaintiff's deed. It was for the plaintiff to show that his constructive possession, and consequently his deed, covered the place where the timber was cut by the defendant. This he has failed to do; for the referee reports: "I am unable from the evidence to locate the Scott land with reference to the disputed territory." Hence it is clear that the plaintiff has not shown himself in constructive possession of the place in dispute, if we confine ourselves to the language of his deed.

It is true that Burnap and Rice, when they surveyed the land, preparing to make the conveyance, marked a line along the western border, and that this embraced the territory in dispute. But this line is not described nor referred to in the deed; it is irregular, turning several right angles in its course, and does not even appear to have been so marked as to be observable by one seeking to follow the deed. Running and marking the line were not themselves acts of occupation; *Oatman* v. *Fowler,* 43 Vt. 462; *Kidder* v. *Kennedy,* 43 Vt. 717;

*Paine* v. *Hutchins,* 49 Vt. 314; and there was nothing about the surveyed line to give counter-claimants notice that this, rather than the true boundary of the Scott land, was the limit of the plaintiff's claim. The principle is the same to this extent as in questions of adverse possession. Indeed it was formerly held that a plaintiff, to maintain trespass, even against a stranger to the title, by virtue of prior possession alone, must show such an occupation as would, if continued for the requisite period, give him title against the owner himself. *Doolittle* v. *Linsley,* 2 Aik. 155, 158; *Sawyer* v. *Newland,* 9 Vt. 383, 393; *Ralph* v. *Bayley,* 11 Vt. 521; *Spear* v. *Ralph,* 14 Vt. 400. And although in more recent cases is has been held that the occupation need not have been such as to have worked a disseisin of the true owner, and, consequently, not such as would, even if continued for fifteen years, ripen into a perfect title against him, yet these cases do not infringe upon the rule we have stated, that the occupation of a part, in order to be extended by construction to the whole, must be under a claim of title to the whole, evidenced either by some writing that affords color of title and defines the limits, or by obvious boundaries upon the land itself. *Langdon* v. *Templeton,* 66 Vt. 173, 28 Atl. 866; *Davenport* v. *Newton,* 71 Vt. 11, 16 and 17, 42 Atl. 1087.

A case almost decisive of the one before us, so far as this point is concerned, is *Shedd* v. *Powers,* 28 Vt. 652, from which the following is taken: "We have no doubt one may have constructive possession of land independent of paper title or claim  *  *  *  . But it should be marked by unmistakable *indicia* of claim, of use and right to control. A fence is always sufficient for this purpose. A mere marked line has not of itself been yet held sufficient. But, in the absence of all paper title, probably it might be so made as to be equally indic-

ative of claim of title without any other monument.    But where there is paper title, as in the present case, it requires very distinct occupancy to extend the possession beyond the limits described in the deed, inasmuch as the deed, while it is notice of claim to the extent of the boundaries therein set forth, is also a distinct disclaimer of any further pretensions."

So we think the plaintiff's constructive possession, if he had any, was not extended by the line of his survey beyond the limits named in his deed.

The plaintiff also claims that he can recover as being the real owner of an undivided portion of the land.  Ephraim Rice was one of the original proprietors of the town, and the plaintiff is a lineal descendant.  The old records being lost, it was not shown whether an allotment was ever made.  But if we presume that there was none, or none of the land in question, it does not help the plaintiff; for it does not appear that he is an heir of Ephraim Rice but only a lineal descendant which is by no means the same thing.  We do not know when the ancestor died, nor who were then his heirs, nor whether, if they were other than the plaintiff, they be not still living.  So that on this point as well as the other the cases fail.

*In each case the pro forma judgment of the County Court is reversed, and judgment is rendered for the defendants to recover their costs.*