### CATHERINE SAWYER v. HARLEY COOLIDGE.

#### *Deed. Ejectment. Construction. Evidence.*

Where a deed conveyed a tract of land "except eight acres on the south-west corner of said tract being the land where Jonas Coolidge now lives," and it appeared that the eight acres as *occupied* by Coolidge had definite limits and boundaries, at the time of the execution of the deed, which was known

to the grantee, but the occupancy did not extend up to, and was not upon the true west line of the tract ; *Held*, that without the words "being the land where Jonas Coolidge now lives," the exception would be construed to mean eight acres in the south-west corner on the south and west lines of the tract, but that with those words, it would be construed to mean eight acres as then occupied and possessed by Jonas Coolidge.

The acquiescence of the husband in line fences and boundaries of land will not affect the rights of the wife,'when the land is her separate estate.

EJECTMENT for land in Plymouth. Plea general issue. Trial by jury, May Term, 1860,—REDFIELD, Ch. J., presiding.

The facts necessary for a proper understanding of the point decided sufficiently appear in the opinion of the court.

Exceptions by the plaintiff.

*Washburn & Marsh*, for the plaintiff.

———— *Fullam* for the defendant.

BARRETT J. The deed of John Coolidge dated June — 1813, conveyed to the plaintiff a certain described tract of fifty-three acres, from which eight acres was reserved. The plaintiff stands in this suit upon her rights acquired by virtue of that deed. The question is as to the location of that eight acres. In virtue of that reservation and the conveyance in 1822, by John Coolidge to Jonas Coolidge, Jr., the defendant asserts his rights in reference to the plaintiff's claim.

The reservation is of eight acres in the south-west corner of the land described in said deed to the plaintiff, and adds : "being the same land on which Jonas Coolidge now lives."

The south-west corner bound of the tract described in the deed to the plaintiff, was, and is, a fixed point, about which there is no controversy. The southern boundary of said tract was, and is, a fixed line, about which there is no controversy. It is proved that the western boundary at the time of said conveyance to the plaintiff was an old marked line, and no other line is shown to have existed. So there could be no doubt what line was meant in said description.

Hence if the reservation had been simply of *eight acres in the south-west corner of said described tract*, the southern and western

bounds of said eight acres would have been parts of the lines each way from said corner bounding the main tract, and the other bounds would have been equal opposite lines subtending equal opposite angles.

This is so well settled as to render discussion unnecessary. The location and boundary of said eight acres, in this way, the plaintiff claims as her right in this suit. The defendant claims that the true western boundary of said reservation is, and should be held to be, a line starting from the south-west corner of said fifty-three acre tract, and running northwardly on a range bearing several degrees eastward of the said western line of said tract as described in said deed, and that the other bounds are, and should be held to be, equal opposite parallel lines subtending equal opposite angles.

The controversy in this case grows out of this difference of claim between the plaintiff and defendant.

It appears that John Coolidge, in 1791, pitched a parcel of land and caused it to be surveyed, and a plan of it to be made, and the survey and plan to be recorded, of which parcel said fifty-three acres described in his deed to the plaintiff, is the southern portion, and of which the western boundary was a line then marked, and is the same that bounds said fifty-three acres according to the description in his said deed to the plaintiff. As early as 1796 he went into possession of said pitch, as thus made and recorded, and thereafter by himself, and his grantees continued such possession. The jury have found by their special verdict that, between 1791 and the date of John Coolidge's deed to Jonas Coolidge, Jr., of the eight acres in 1822, all the proprietors holding land adjoining the west line of the *"interval lot,"* (being said fifty-three acres,) by mistake or otherwise, supposed the line which the defendant claims, was the true west line of said *"interval lot;"* that under this belief the defendant has pitched and held the eight acres, &c. ; that the first evidence of this belief was the pitch of thirteen acres in 1816, and of thirty-five acres in 1818, next west of said pitch of John Coolidge in 1791, and bounded on the east by the line which the defendant claims as the true western boundary of said eight acres.

It seems clear that the plaintiff could not be affected in her

21

rights by the belief, sayings, or acts of her husband in reference to a mistaken boundary of her land, as described and conveyed in the deed of her father to her ; inasmuch as it does not appear that either he or she have asserted any rights predicated upon said mistaken line being the true line, as against the rights of the defendant in reference to said eight acres or as against any adjoining owner.

The plaintiff stands upon her rights under the deed conveying to her said fifty-three acres, with he reservation of said eight acres ; and after said conveyance, her rights under it could not be affected by anything that her father may have said or done as to his belief, or by way of recognizing said mistaken line as being the true western boundary of the land so conveyed to the plaintiff. The acts and sayings of her husband could no more become operative against her by way of acquiescence than in any other way ; and there is nothing of actual acquiescence on her part shown, or that she had any knowledge of, or part in, what was said and done by her husband in relation to the western boundary of said "*interval lot.*" The effect of that reservation must therefore depend on its own terms in its application to the subject matter of it as the same was situated at the time the deed to her was given. John Coolidge obviously designed to reserve a certain specific piece containing eight acres. It appears that under an arrangement between said John and Jonas Coolidge, Jonas went on to the south-westerly part of said "*interval lot,*" in 1807, erected a house and moved into it in November, and lived there ever after ; that by said arrangement John was to give Jonas ten acres, but afterwards concluded to let him have but eight acres. There is no question that said reservation by John in his deed to the plaintiff, was designed to cover the eight acres which Jonas was to have under that arrangement. It is a conceded fact that Jonas immediately commenced improving and occupying a tract limited on the south by the south line of the tract as described in the deed of John to the plaintiff, and on the west by the line which the defendant claims as the true line, and far enough north and east to make at least eight acres ; and in the language of the special verdict, " that under the belief that this was the true west line of the interval lot the defendants have pitched and held the eight acres."

The case shows, and it was conceded in the argument, that no question was ever made by said John Coolidge or anybody else, but that said western limit of said eight acres, thus pitched and held by Jonas Coolidge and his grantees, was right and satisfactory.

It thus appears that at the time said John conveyed to the plaintiff, making said reservation " the piece of land on which said Jonas then lived " was definitely located and limited, particularly on its southern and western boundaries. This fact, taken in connection with the language by which said reservation was made, gives rise to the question as to the construction and application of that reservation in reference to the tract described in, and conveyed by, the deed in which said reservation is made.

If the reservation was only by a general designation, as being eight acres in the south-west corner of said fifty-three acre tract, the implication of law as to the intent of the party making it would be conclusive, and fix the location and boundaries as the plaintiff claims. But when to such a general designation is appended a specification of the precise thing intended, and it is shown that the thing existed answerable to such specification, the law then is equally conclusive, that the general designation shall be construed into conformity therewith.

Under these views, upon the fact of the pitch found by the special verdict to have been made in 1807, and the holding under the same from that time to the present, with an occupancy of said eight acres, always limited on the west by the line claimed by the defendant, as its true western boundary, we regard the judgment of the county court to be well warranted.

So far as these facts are concerned, it becomes unnecessary to discuss the propriety of admitting the evidence as to the declarations made by the husband of the plaintiff, as to the west line of the " interval lot," or the south-east corner of the thirteen and one fourth acre piece ; for these facts, in their origin, history and proof, are entirely independent of any such declarations. They were equally independent of any of the evidence tending to show any adoption of a mistaken west line of said " interval lot," after the conveyance to the plaintiff, and of the instructions to the jury on the subject, either of the adoption by mis-

take of such west line, or of its establishment by acquiescence.

If the jury had returned a general verdict for the defendant, or if the finding of the special facts upon which, in connection with unquestioned proof and facts conceded, we think the judgment should be maintained, had in any way depended on the objected evidence, or the instructions of the court, as to the recognition by mistake or otherwise, of a western line of the interval lot, different from that established in the original pitch, and named in the plaintiff's deed from her father, we might have found some difficulty in upholding the verdict.

In our apprehensions, upon the evidence as it is before us, the proper point to have put to the jury, as bearing upon the construction which the defendant claims for the reservation in question was, whether in point of fact, the eight acres on which Jonas Coolidge then lived, was a specific tract, with a defined occupancy, at the time John Coolidge conveyed to the plaintiff,—identical with that occupied and claimed by the defendant, at the time this suit was brought. Inasmuch as that fully appears by the special verdict and other unquestioned facts in the case, independently of, and unaffected by, any evidence or instructions of a questionable character, it is our duty to act upon it, in giving construction to the reservation, and upon the construction we thus give, the plaintiff would not be entitled, as in the language of the exceptions at the close she does not claim to recover.

The case furnishes material, out of which in view of some points made in the argument by the defendant, a much broader field of discussion might have been occupied,—but as the view thus presented seems to us to embrace the vital point in the case, and the only one on which he can stand, we have thought best to confine our present discussion within the present limits.

The judgment is affirmed.