## CHARLES E. BRAGG v. FRANK LARAWAY.

LAMOILLE COUNTY, 1893.

Before :    ROSS, CH. J., ROWELL AND MUNSON, JJ.

*Adverse possession.    Actual occupancy.    No visible bound-
ary.    Right of action without damage.    Charge
of court.    Evidence.*

1.  One, without title or color of title, may acquire title by ad-
    verse possession up to a certain line, although he never has
    maintained a visible and notorious boundary along the line,
    provided he has had such an actual possession up to it
    as would otherwise perfect his title in that manner.

2.  If the charge below proceeds upon the theory that the evi-
    dence tended to show a certain fact, the supreme court will
    assume that it did so tend, unless the exceptions affirma-
    tively show the contrary.

3.  Although the plaintiff's land was by the terms of his deed,
    which was on record, bounded on the north by the land of
    the defendant, and there was on that side a visible bound-
    ary line between the two, still the plaintiff might acquire
    title by actual adverse occupancy north of his north line.

4.  An action of *qua. clau.* will lie for an entry upon the lands of
    another although no actual damage is shown.

5.  A charge should be construed in view of the evidence and the
    jury must be presumed to have so understood it, and when
    it is evident from a consideration of the whole charge as
    applied to the case that the jury were not misled, the judg-
    ment will be affirmed.

6.  The declarations of a former owner of land as to its bound-
    aries, made after he has parted with his title, are not ad-
    missible.

43

This was an action trespass *quare clausum*. Plea, the general issue. Trial by jury at the December term, 1892, TAFT, J., presiding. Verdict for the plaintiff and judgment on verdict. The defendant excepts.

The plaintiff declared against the defendant for breaking and entering a part of lot No. 5 in Waterville, occupied by the plaintiff as a sugar-place.

The defendant was the owner of lot No. 10. It was conceded that lot No. 5 was bounded by lot No. 10 upon the north, and the controversy was whether the *locus* in question was a part of lot No. 5 or lot No. 10. The plaintiff claimed that the north-west corner of lot No. 5 was a hemlock tree; while the defendant contended that this corner was about thirty-three rods farther south. It appeared that between this hemlock tree and the point where the defendant claimed the line to be, there was a ledge running easterly, that in this ledge was an opening along which a fence had been maintained for some time and that the plaintiff's fence on the east ran up to the easterly end of this ledge.

The defendant contended that this ledge, with the fence in the opening and the plaintiff's fence on the easterly end, constituted the visible boundary line which marked the northerly line of lot No. 5.

In making out his title the plaintiff introduced certain deeds and the defendant claimed that under these deeds the plaintiff did not own to the north line of lot No. 5. The court held that under the deeds the plaintiff did take to the north line of lot No. 5, wherever that line might be, and so instructed the jury, to which the defendant excepted.

As before stated, the plaintiff claimed that the true north line of lot No. 5 was at the hemlock tree, and that the deeds carried him as the owner of lot No 5 to this line; but he still further claimed that if he had by deed neither title nor color of title to the land lying north of the ledge and south of the line where he claimed it to be, nevertheless he had

acquired a title to that land by adverse possession; and h
introduced evidence tending to show that he had cut trees
and sugarwood, tapped some trees and exercised other acts
of possession over this land lying north of the ledge.

It did not appear that there had ever been any line run-
ning eastèrly from the hemlock tree until about two years
before the beginning of this suit, when the plaintiff had
marked a line'through from the hemlock tree. The defend-
ant contended that the possession of the plaintiff would be
bounded by the visible line which he maintained in the ledge
and the fences, and that he would not acquire title by ad-
verse possession any further north than this line; that in
order to enable him to acquire title by adverse possession up
to the hemlock tree line it was necessary that he maintain
some sort of a visible and notorious line there, and requested
the court to so instruct the jury. Upon this point the court
did instruct the jury as follows, to which the defendant ex-
cepted:

" Later surveys indicate where the corners are claimed to
have been and are now, and the lot lines generally in connec-
tion with the matter, those that would be material in deter-
mining where the corner of lot No. 5 and lot No. 10 happens
to be. Of course it is upon this testimony that you must de-
termine where that line is. The plaintiff has a deed of cer-
tain land which is described as the sugar-place. The con-
struction of that deed is for the court and the court tell you
that we think he has what is called color of title to this
land extending to the lot line, the line between No. 5 and
No. 10; that is, that his deed under which he claims de-
scribes land running up to that line. And as no question is
made by the defendant it is conceded that he is in possession,
that is in actual possession of the sugar-place south of the
ledge, as a part of the land that is covered by his deed.

" If he is in the possession of a part of the land covered
by his deed the law says that he is in possession, construct-
ive possession, of all the land that is embraced in his deed;
so that he would have a right to recover in this action for
any trespasses committed south of the true lot line of No. 5.

So if the cutting of trees that has been testified to was south of the true line; that is, if the true line is the hemlock tree line, and it is admitted that the cutting was south of that line, then the plaintiff is entitled to recover in respect to that cutting. Of course if the cutting was north of the true line, the actual line between those lots, he is not entitled to recover in respect to that cutting unless he satisfies you, and the burden is upon the plaintiff to make out his case, to satisfy you upon all these questions, unless he satisfies you that he is entitled to the land where those trees were cut, the land to the hemlock tree, by adverse possession, which I will now state to you.

"The plaintiff claims that irrespective of the true line, if the true line was at the ledge or south of the ledge, if that line was there, that he has been in adverse possession of the land beyond the true line and up to the hemlock tree line for fifteen years. His testimony tends to show that he took possession of the land soon after his deed, which I think was in 1874, and continued in possession until the time of bringing this action, which was a period of more than 15 years; and there was some testimony tending to show a possession, perhaps to a farther point than the line claimed by the defendant, in the grantor of the plaintiff, that is, John Codding, while he owned it; but the plaintiff's testimony tends to show that he was in possession after he obtained it until 1891; that he was in what is called adverse possession of the land for the time which is necessary by the statute to give a party the legal right to it.

"If he was in actual adverse possession of the land for fifteen years, to this line he claims, he is now the legal owner of it, whatever the title upon the record may appear to be. To constitute an adverse possession for that time, so as to bar the real owner from making or asserting his claim, it must be an actual possession, a foothold upon the land, as it is called, an actual entry upon it or a standing upon it.

"It is to be determined, too, in a large measure, by the character and location of the land; the purposes to which it might be put and for which the land could be used in the condition in which it is in, the use to which it could naturally be put. Of course, in case of a lot of that kind, timbered land upon the mountains, you would not expect that a man would plant a garden there every year or use it in

such a manner; but if a sugar orchard, the proper time for the occupation of that, as we all know, is in the spring, not in the fall or late summer; and if it was used for cutting fire-wood, or used for that purpose only, or in connection with a man's house, or timbered lands in connection with his mill, why, you would expect it would be used for the cutting of fire-wood in the usual and ordinary manner, and for the cutting of lumber in the way in which lumber is ordinarily and usually cut. The posssssion of it should not be going upon the land in a stealthy manner and at odd times, but it must be a foothold upon the land, as it is called, by the persons actually using it continuously for the purposes to which such land is ordinarily and usually put. It must be a continuous one. A party cannot claim a piece of land, occupy it for five years and then cease the occupation of it and be out of the possession of it for any time, any length of time, for one year or five, and then come into possession of it afterwards and tack his later possession to the earlier possession. That will not do in making a fifteen years' possession. It must be a fifteen years' continuous possession. It must be exclusive possession, that is, he must be in possession of it against all the world; a distinct, exclusive possession. It must be a hostile possession. He must claim it against everybody, against all the world. It must be open and notorious. He must, as it has been said, keep his flag flying. It must be such a possession, so open and notorious, as will notify the real owner of the land, the one that has title to it, that there is some one on his premises, occupying it and making claim to it. He must act in such a manner as to intimate to the proper owner that some one is there occupying his land. You have heard what the plaintiff says with reference to it. You have heard his testimony with reference to cutting the trees for timber. And it appears that he cut his sugar-wood there at different times, or at some years at least; that he tapped some trees, as I understood him, upon the easterly end of the land, and possibly some between the two ledges where the fence was. Of course it is for you to determine what the facts are in these respects from his testimony and from any testimony upon that subject in the case and see what his acts were, what he did do, what he did do in respect to cutting those trees, the sugar-wood or dead spruces, which I think were referred to as cut for sugar-wood, and

determine what the character and nature and extent of his possession was there at that time. If it was adverse, an adverse possession, claiming it, claiming to own it for the full period of fifteen years, he would become the owner of it, the legal owner; but to constitute it an adverse possession, as I have told you, it must have been an actual, continuous, exclusive, hostile, open and notorious possession of the premises. If you find such a possession from the testimony, the plaintiff is entitled to the land, irrespective of where the true line was or is."

It appeared on trial that the defendant, previous to the beginning of the suit, had made a survey of lot No. 10, and had run a line, which he called the true line, south of the hemlock tree line; that in running this line he marked the trees in the course of the line, doing no further damage than such marking of the trees would occasion.

The defendant requested the court to charge that the running of this line was not a breaking and entering of the plaintiff's close. This the court declined to do and instructed the jury that if the defendant ran the line through there as he admitted he did, and the land was the land of the plaintiff, then the plaintiff would have a right of action to recover of the defendant at least nominal damages, even though he acted in good faith. To the charge in this respect the defendant excepted.

The court instructed the jury upon the subject of damages, that if they found the line to be where the plaintiff claimed it, and that the defendant entered upon the plaintiff's land, as the evidence tended to show he did, the plaintiff would have no right to recover exemplary damages, unless the action of the defendant in entering upon the land was wilful and malicious; but that if the defendant acted wilfully and " if in doing what he did he admitted that the line was north of what he claimed, if he entered upon the premises and committed this trespass, knowing that he was a trespasser; if he did it in a wilful and malicious manner," then

the jury might award exemplary damages. To the charge of the court upon the subject of exemplary damages the defendant excepted.

There was no evidence in the case tending to show that the defendant at any time admitted that the line was further north than as he claimed it.

The jury returned a general verdict for the plaintiff, and also returned the following special verdict:

"Where is the line between lots number 5 and 10, the hemlock tree line, the ledge line, the one marked through the sugar-place, or in what other place?

"Answer. Hemlock tree as a line.

J. T. JEWETT, *Foreman.*

"Did you include any exemplary damages in your verdict?

"Answer. Yes.

| | |
|---|---|
| Stumpage, | $17.80 |
| Exemplary | 14.58 |

$32.38

J. T. JEWETT, *Foreman.*

"Has the plaintiff been in adverse possession of the land as far north as the hemlock tree line for fifteen years?

"Answer. Yes.

J. T. JEWETT, *Foreman.*"

The defendant offered to prove that the plaintiff's grantor said repeatedly, after he had parted with title to the land, that he never claimed any land north of the ledge. The court excluded this testimony and the defendant excepted.

*P. K. Gleed* and *H. M. McFarland* for the defendant.

The court should have instructed the jury that there was

no evidence tending to show such a possession north of the ledge as would give the plaintiff title by adverse user. *Hapgood* v. *Burt*, 4 Vt. 155 ; *Swift* v. *Gage*, 26 Vt. 224 ; *Wells* v. *Austin*, 59 Vt. 157 ; *Soule* v. *Barlow*, 49 Vt. 329 ; *Smith* v. *Higher*, 12 Vt. 113.

*Geo. M. Powers* for the plaintiff.

The jury found specially that the plaintiff had acquired title by adverse possession, and there was evidence tending to show this. There was no error in the charge upon this subject. *Partch* v. *Spooner*, 57 Vt. 583 ; *Wells* v. *Austin*, 59 Vt. 157.

The opinion of the court was delivered by

ROWELL, J. The declaration describes the *locus* as being " part of the northern fourth of lot No. 5 in said Waterville, occupied by the plaintiff as a sugar-place.", Plaintiff's deed from John Codding and wife, dated March, 1874, purports to convey twenty acres, more or less, called the sugarplace, being a part of lot No. 5 in Waterville, bounded by the lands of certain persons named. Plaintiff claimed, and introduced evidence tending to show, that the northwest cornor of said lot is a certain hemlock tree ; while the defendant claimed, and introduced evidence tending to show, that the true north line of said lot is about 33 rods south of the hemlock tree. It was admitted that between these two points there is a ledge extending easterly across the land, with an opening in it,. and that in this opening a fence had been maintained for many years ; that plaintiff's sugar-place came up to the foot of this ledge ; and that the fence on the east side of plaintiff's land, mentioned in the deed of February 4, 1867, from John Codding to Joel Codding, ran east to this ledge and stopped. The only line running east from the hemlock tree is a marked-tree line, made by the plaintiff

about two years before the time of trial. Plaintiff claimed
that his deed gave him title up to this line, which he
claimed to be the north line of No. 5 ; but if it did not, nor
color of title, that he had acquired title up to that line by ad-
verse possession. The defendant claimed that the plaintiff
had neither title by deed, color of title, nor title by adverse
possession, north of the ledge.

The testimony on the part of the plaintiff tended to show
that in the spring of 1876 he cut sugar-wood, dry spruces,
and such other timber as he wanted, as high up as the hem-
lock tree; that he cut a portion of his sugar-wood there,
above and below the ledge; that he sold some ash timber
that stood above the ledge, which was cut the first fall he
went there, and that he cut some logs on the disputed strip.
Plaintiff offered no testimony that he had maintained any
notorious or visible line as far north as the hemlock tree,
and admitted that he had run no line of any kind east from
that tree except the marked-tree line aforesaid. The defend-
ant requested the court to charge that the acts of the plaint-
iff north of the ledge and the fence in the opening were not
sufficient to give him title by adverse possession to any land
north of the natural and visible boundary of ledge and fence.
The court refused to charge as requested, but charged that
if plaintiff had neither title by deed nor color of title north
of the ledge, he could, nevertheless, acquire title north of it
to the hemlock-tree line by adverse possession.

It is now claimed that the court erred in refusing to charge
as requested and in charging as it did, for that there was
not such a visible, notorious, open boundary running easterly
from the hemlock tree as would notify the world that the
plaintiff was claiming to that line, wherever on the lot he
cut.

If the exceptions mean that the plaintiff offered no testi-
mony to show a notorious, open, visible and distinct pos-
session as far north as the hemlock-tree line, it was certainly

error to charge that he could acquire title up to that line by adverse possession; for nothing is better settled than that those elements must characterize a possession in order to ripen it into title.   But we do not understand the exceptions to mean that, but to mean that the plaintiff did not offer to show that he had ever made a line through there by building a fence, marking trees, setting monuments, or the like, until he made the marked-tree line about two years before the time of trial. The whole charge on this branch of the case goes upon the ground that there were other visible, notorious, and well defined evidences of adverse possession up to the marked-tree line; for the court told the jury that the plaintiff must have had a foothold on the land continuously, and that his possession of it must have been actual, exclusive, hostile, open, notorious, and distinct up to that line. If the testimony tended to show all this, it was enough in that regard; and that it did so extend we must assume, as the exceptions do not show that it did not.

Lot No. 10 adjoins No. 5 on the north, and is owned and occupied by the defendant.   It is claimed that the plaintiff's deed, which was on record, referred and restricted his possession to lot No. 5, and that the court should have charged as requested, that the ledge and the fence in the opening were such a visible and notorious boundary that the owner of No. 10 had a right to determine by inspection that the owner of the sugar-place was claiming no land north of that visible boundary.   This claim is based on the contention made below that the ledge is the north line of No. 5, and is equivalent to claiming that there was no testimony tending to show adverse possession north of the ledge, which, as we have said, the exceptions do not show.   But if counsel mean that the court should have charged that the owner of No. 10 had a right to determine by inspection whether the owner of the sugar-place was or was not claiming to own north of the ledge, assuming that his deed did not carry him north of it,

the court did, in effect, charge that, when it said that if plaintiff had neither title by deed nor color of title north of the ledge, he could, nevertheless, acquire title north of it to the hemlock-tree line by adverse possession, and that his possession must have been so open and notorious as to notify the real owner that some one was on his land, occupying and making claim to it.

There is, then, no error in this branch of the case; and that makes it quite unnecessary for us to consider whether the court erred or not in charging that plaintiff's deed describes land running up to the north line of No. 5, and gives him title to that line, for the question of adverse possession was submitted to the jury in such a way that its decision could not have been at all influenced by that construction of the deed.

As to liability for marking the line through plaintiff's sugarplace, defendant says *de minimis.* But this maxim is not of universal application, but is often limited and rendered inapplicable by other maxims, and especially by the maxim that there is no wrong without a remedy, under which, when it is material to the establishment or the preservation of the right itself that its invasion should not pass with impunity, an action lies, although no actual damage has been sustained. The test seems to be whether the act complained of would, if repeated, operate in derogation of the right. Hence trespass *qua. clau.* is maintainable for an entry upon the land of another, although there is no real damage, because repeated acts of the kind might be used as evidence of title, and thereby the right of the plaintiff might be injured. Broom's Leg. Max. (*203); Taunton, J., in *Marzetti* v. *Williams*, 1 B. & Ad. 415; *Cole* v. *Drew*, 44 Vt. 49; *Fullam* v. *Stearns*, 30 Vt. 443. So a commoner can maintain an action for injury to the common by taking away manure dropped thereon by the cattle, though his proportion of the damage be only a farthing, for by repeated acts of that kind a

mere wrong-doer might, in course of time, establish evidence of a right of common. *Pindar* v. *Wadsworth*, 2 East. 154. In *Harrop* v. *Hirst*, L. R. 4 Exch. 43, the inhabitant householders of a district were entitled by custom to a flow of water to a spout on a highway, and to the use of the water in their houses for domestic purposes. A riparian proprietor through whose land the water flowed on its way to the spout, on various occasions, diverted the water so as sensibly and materially to diminish its flow, and various inhabitants of the district were thereby inconvenienced by failing to obtain water at the spout when they wanted it. The plaintiffs, being occupiers of a house in the district, brought suit against such riparian proprietor for an infringement of their right, but the jury found that they had not personally sustained any actual inconvenience from the want of water. It was held, nevertheless, that the action was maintainable, inasmuch as the acts of the defendant, if continued, would be evidence of a right in derogation of the right of the plaintiffs as inhabitants of the district.

The court charged that if the defendant, in doing what he did, admitted that the line was north of where he claimed it to be, if he entered upon the premises and committed the trespasses knowing that he was a trespasser, and did it in a wilful and malicious manner, exemplary damages could be awarded. This is claimed to be error, for that it charged a falsehood into the case, because the exceptions show that there was no evidence that the defendant ever admitted the line to be farther north than he claimed it. But the tenor of the whole charge on this subject is to the effect that the defendant must have known he was a trespasser in order to the awarding of exemplary damages; and this is all the more clearly so because there was no testimony tending to show admission in the ordinary sense of that term. The language of the court must be construed to some extent in the light of the case as disclosed by the testimony, and the jury must be

presumed to have construed it somewhat in that light also, and we think there is no fair ground for saying that by that remark the jury was given license to conjecture touching a matter concerning which there was no proof, or was otherwise misled.

That the declarations of the plaintiff's grantor, made after he had parted with his interest, were not admissible, is too plain to warrant discussion or the citation of authorities.

*Judgment affirmed.*