MARY E. PALMER, Appellant, v. PERILLA OSBORNE AND NANNIE A. FULLER.

**Boundaries Fixed in Partition:** *Not binding on those not parties.*
1 A description of boundaries of a tract of land, contained in the report of referees appointed to make a partition thereof, is not

2  binding on adjoining owners who are not parties to the parti-
tion suit.

CUSTOM AS EVIDENCE OF.  A custom existing in a certain city to locate
division lines by the tops of ridges in platting additions will
3  not justify the regarding of a ridge as the division line between
an addition and adjacent property, when a different line has
been established by metes and bounds in a deed from the orig-
inal owner of the addition.

ADVERSE POSSESSION:    Occupancy by mistake.  Where defendant
erected a fence on what he thought to be the boundary line
of his lot, but which, in fact, included some of plaintiff's land,
4  and maintained the same for the statutory period, regarding
it as the true boundary, but not claiming plaintiff's land so
included, except as a part of the lot, the possession was not
adverse, so as to ripen into title by limitation.

Acquiescence.  Defendant built a fence on what he believed to be
the boundary line between his lot and that of plaintiff, but in
fact on plaintiff's land, and including part of his lot.  The lot
5  was unoccupied, and plaintiff was a non-resident, and had no
notice of the existence of the fence except that which might
be implied from ownership.  Held, that there was no acqui-
escence in the boundary, as established by the fence, from
which an agreement that it was the true boundary might be
presumed.

*Appeal from the Pottawattamie District Court.*—HON. W.
R. GREEN, Judge.

WEDNESDAY, OCTOBER 9, 1901.

ACTION to quiet title.  The plaintiff appeals from de-
cree dismissing her petition.—*Reversed.*

*George W. Hewitt* for appellant.

*Harl & McCabe* for appellees.

LADD, J.—In 1854 Wm. D. Johnson owned the south-
east ¼ of the northeast ¼ of section 25.  On September 26th
of that year he executed to Corfeild a deed of 16 acres thereof
in the northwest portion of the 40, described as follows: "Be-
ginning at the northwest corner of the southeast quarter of

the northeast quarter of section 25, in township 75 north, range 44 west; running thence south 14 chains and 25 links; thence east 11 chains and 50 links; thence north 1 degree, west 3 chains and 50 links; thence north $4\frac{3}{4}$ degrees, west 2 chains; thence north 1 chain; thence north 30 degrees, east 4 chains; thence north 46 degrees, east 1 chain 14 links; thence west 13 chains 17 links, upon the line of the 40, to the place of beginning." This description, it will be observed, is defective in that the point reached by next to the last course is almost three chains below the north line of the 40, being "Q" of the plat A accompanying this opinion:

Plat A.

In 1857 the rest of the 40 was platted as "Johnson's Addition to Council Bluffs," a portion of which is set out as plat B:

### Plat B.

Distances were given only as indicated, and conveyances have since been made by reference to lot numbers. The defendants own lots 32 and 33. Several persons became jointly interested in the 16-acre tract and in 1866 partition proceedings were begun. Upon discovery of the defect of the deed to Corfeild, Johnson executed a conveyance to the then owners, correcting the description so as to read: "At a point on said line 13 chains 17 links from the northwest corner of said quarter section; thence running west on said north line to said northwest corner; thence south 14 chains 25 links; thence east 11 chains and 50 links; thence north, 1 degree west, 3 chains and 50 links; thence north 4¾ degrees west, two chains; thence north one chain; thence north 30

degrees, east 4 chains; thence on a straight line to place of beginning." The correction consisted in the omission of the next to the last course in the Corfeild deed, and in its place running a line due north to the north boundary of the 40. Whether any of the lots in the addition had been disposed of prior to this time does not appear. The referees appointed in this suit, in their report, describe the land as in this corrected conveyance, but filed a plat, set out as plat C, dividing it in five parcels.

PLAT C.

The plaintiff is the owner of lot 2, and the object of our inquiry is to ascertain the true boundary between this lot and lots 32 and 33 of the addition. In the referee's deeds the distance from the commencement point to the northwest corner of the 40 is given as 13 chains and 70 (instead of 17) links. But it is very clear that, as the distance is stated in the petition, decree, and plat as 17 links, and the latter is attached to the deed, this should be treated as a mistake, and

13 chains and 17 links regarded as correct. Such was the evident intention of the Corfeild deed, as is clearly indicated by the description of the last course: "Thence west 13 chains 17 links, upon the line of the forty, to the place of beginning." Though a defective description two things are manifest from the Cornfeild deed: (1) The east line from "V" to "N" on plat A was intended as the east boundary of the tract, and (2) the northeast corner was intended to be on the north line of the 40 at "O," 13 chains and 17 links east of the northwest corner thereof. The defect merely was in the omission to connect the point "N" with "O." As intimated, the distances the lots in the addition run back from Logan street are not indicated on the plat. Possibly, these might be approximately ascertained by comparison and scaling, but as suggested by appellee, this would furnish very indefinite and uncertain results. No natural monuments are referred to in the deeds or plat of the addition, and as the deed preceded the plat about two years, we think it points out the true boundary between the 16-acre tract and the addition, notwithstanding that "scaling" the plat might indicate a greater depth of lots than this would give. The appellee relies somewhat on the plat and survey in the referee's report. One of these referees was a professional surveyor, and in doing the work began at the top of the ridge on the north line of the 40 at the point "E" in plat A, about 32 feet west of "O." His reason for doing so is not disclosed by the record. Incidentally he reached the top of a ridge at "P" as the southeast corner of the tract, but in doing so must have ignored the west line of the forty. Certainly, there is nothing previous to this survey warranting the supposition that any consideration had been given to the ridge as a monument. Nevertheless, he appears to have followed it as the east boundary up to the point "A," plat A, at least to where it veers to the west 17 degrees and some minutes. Great importance is sought to be attached to the words on the referee's plat "fol-

lowing the ridge," and it is contended that courses and distances appearing thereon must give way, and the ridge followed absolutely as a division line. But it is to be remembered this is not an original survey, and the referees were not appointed to settle disputed lines between the parties to the suit and adjoining owners, who would not be bound by what was done. The survey was merely incidental to the apportioning of the land, and the plat to indicate precisely how it had been divided. This plainly shows that the only original lines run were from the west to the east boundary of the tract, there dividing it for the respective owners. That these were intended to run to the east line is made manifest by the words "West line of Johnson's Add." preceding the words mentioned. True, the referee making the plat supposed the lower part of the ridge to mark the boundary, and undoubtedly that has been the understanding of several persons for many years. But the record does not bear out this conclusion. It is pure assumption. Again, it is insisted the course and distance, "N., 30° E., 4.00 ch.," should be ignored, and the ridge followed 17-odd degrees west instead. To do so would involve the assumption that the referees abandoned the true boundary as pointed out in the Corfeild deed, and the general course of this line as shown by the plat of the addition. It is the more reasonable to say "following ridge" refers to the line up to that angle, not beyond, and that the notation and direction of the line in this plat having the trend of the true line was as intended. But, as previously remarked, their duties did not demand an entirely accurate survey of division lines. If so approximately ascertained as to enable them to make an equitable partition of the entire tract, it was enough. That this was done is put beyond question by the report and the court's decree, each describing the east boundary as we have found it. It may have been the custom, as declared by one witness, in platting additions to Council Bluffs,

to locate division lines at the tops of ridges; but if so, this will not justify ignoring them when established elsewhere. We think the true boundary is as contended by plaintiff, being the line "I" and "K" on plat A.

II.   The owners of lots 32 and 33 constructed a fence along the ridge, as they supposed on the boundary between them and lot 2, as early as in 1878, and in transferring them this has been since pointed out as marking the division.   But neither they nor their grantors have ever claimed land between the true boundary as we have found it and this ridge, save as a part of said lots. It is the case of a mistake in boundaries, and the doctrine of *Grube v. Wells,* 34 Iowa, 148, and the long line of cases following it, must be applied.   But appellees insist the fence should be treated as marking the line because of acquiescence.   Lot 2 had been unoccupied until shortly before the suit, at least, and the plaintiff is a non-resident.   It was overgrown with brush, and nothing in the record indicates that its owners had any knowledge of the fence, save that presumed from their ownership.   The plaintiff acquired the lot in 1890, and her agent at about that time noticed the fence.   But nothing was said or done, tending in any way to show recognition of it as a boundary.   In this respect the case is to be distinguished from *Doolittle v. Bailey,* 85 Iowa, 398, relied on by appellees, wherein Doolittle changed his fence to conform with the corner as found, and with actual knowledge acquiesced in it for eight years, and the presumption was indulged that his grantor, though a non-resident, must have known of the location of the road and the construction of the fence for at least two years previous. Nor does it come within the rule of *Miller v. Mills County,* 111 Iowa, 654, where the adjoining owners occupied and cultivated up to the fence for sixteen years. That others have deemed this fence on the line does not aid defendants' case.   The owners of lot 2 had nothing to do with locat-

ing or maintaining it, and did nothing to indicate acquiescence in it as a line, except in remaining silent. Their knowledge is presumptive, not actual; and, as one presumption cannot be based on another, an agreement will not be implied therefrom.—REVERSED.