## J. H. SILSBY & Co. *v.* C. A. KINSLEY.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Review—Presumptions—Trial Court's Statement of Claim—Deeds—Description—Boundaries — Establishment — Township Lot—Lines of Adjoining Lots—Presumptions—Range Line—Acquiescence — Knowledge—Evidence—Sufficiency—Adverse Possession—Title—Disseisin—Intent—Interruption of Possession—Constructive Possession—Two Simultaneous Constructive Possessions of Same Realty—Mistaken Claim—Harmless Error—Exclusion of Evidence.*

Where the record shows that the trial court in its charge to the jury stated the claim of a party, it will be presumed on review that the court stated the whole claim.

In a conveyance of a township lot, the designation of the land by lot and range number is in legal effect a description according to the lines of such lot as surveyed and established in the original division of the town, as definite as if those lines were described, and those lines, if surveyed and marked on the ground, serve as monuments in fixing the boundaries, and determine the limits of the grant.

But if those lines have never been surveyed, or when their location on the ground cannot be otherwise ascertained, resort may be had to the lines of adjacent lots to determine the location of the lines in question.

Where there are no marks on the ground, an original range line of a township is taken to be straight, and its course across disputed

land will be determined, *prima facie*, by extending it from a point where its actual location can be ascertained.

Mutual acquiescence in a boundary line by adjoining landowners, who are not in defendant's chain of title, cannot affect his rights in a third adjoining lot.

Mutual recognition, of which actual or imputed knowledge is the very essence, is requisite to establish a boundary line by acquiescence.

In an action involving a disputed boundary line, evidence *held* not sufficient to show a claimed line across defendant's lot by either acquiescence or adverse possession.

While one may, by mere intention, if uninterrupted, retain his actually acquired possession of real estate, intention or claim of ownership is not sufficient for the acquisition of such possession.

Where I have the record title of a lot of land, under which I claim the whole lot, I have constructive possession of the whole, and nothing short of actual adverse possession can disseise me of any part of it, and so the owner of an adjoining lot, by merely running and plainly marking a line across my lot and thereafter being in continuous actual possession of his lot, claiming that line as the boundary, cannot have constructive possession of any part of my lot, especially where he is holding under a paper title limiting his constructive possession to the bounds of the adjoining lot.

Any adverse possession by one in the chain of plaintiff's title to a lot of land was interrupted during the time it was owned by the next grantee in that chain, who never went onto the lot, never did nor caused to be done any acts of possession thereon, and knew nothing about the boundaries thereof, so that his possession could not be tacked to that of subsequent grantees to make up the requisite period of continuous adverse possession.

In an action involving the boundary line of adjoining lots, evidence of plaintiff's grantor that after he ran and marked on defendant's lot the line in dispute witness claimed that line as the west line of his lot, while relevant to plaintiff's claim of adverse possession of the disputed tract and acquiescence in the disputed line, was immaterial in view of his failure to introduce evidence of either such adverse possession or acquiescence.

Testimony of such grantor that he had pointed out that line to one whom he hired to cut timber for him and who cut timber to that line, but opposite the lot of another and not on the disputed tract, was immaterial on the issues of adverse possession of the disputed tract and acquiescence in the disputed line.

The claim and acts of such grantor only while he was the owner, and in possession, of the lot were material, and so his testimony that he concluded that his claim was unfounded, without showing when that conclusion was reached, was properly excluded.

Testimony that the owner of a timber lot, who had never been thereon, never did nor caused to be done any acts of possession on it, and knew nothing about its boundaries, sent prospective buyers, who were later his grantees, to his grantor for information as to the boundaries of the lot, who pointed out to them the boundaries as he claimed them while owner, did not tend to show the claim made by the owner as to the bounds of the lot.

Declarations of a former owner of land as to its boundaries, made after he has parted with his title, are not admissible.

In an action involving a disputed boundary of a timber lot, testimony of plaintiff's immediate grantor that just before he conveyed to plaintiffs he pointed out to them the line in question as a boundary line was incompetent as evidence of the location of the range line across the disputed tract, but would be admissible on an issue of adverse possession, as tending to connect the claim and occupation of witness with that of plaintiff.

In an action involving a disputed boundary of a timber lot, it was error to exclude testimony for defendant that a surveyor employed by the common grantor, when running a line from which plaintiffs' claimed line was an extension, had no notion that he was running a range line, but ran it because his companion wanted to have it run on the same course as the range line for purposes of his own, where it appeared that the companion represented the common grantor in the survey, and that plaintiffs were claiming that the line run by the surveyor was run by such grantor's agents as part of the east line of plaintiffs' lot and fixed the location of the whole east line thereof, and the question of what the surveyor understood he was doing when he ran the line was directly submitted to the jury on the question of the establishment of the line by acquiescence.

TRESPASS for breaking and entering plaintiffs' close, with a count in trover for the conversion of logs cut thereon. Plea, the general issue. Trial by jury at the March Term, 1914, Orleans County, *Waterman*, J., presiding. Verdict and judgment for plaintiffs. Defendant excepted. The opinion states the case. Here is the "sketch" referred to in the opinion.

*J. W. Redmond* for the defendant.

*Young & Young* for the plaintiff.

TAYLOR, J.   The action is trespass for breaking and enter-
ing plaintiffs' close described as lot 14, range 17, in the town of
Lowell, with a count in trover for the conversion of certain
saw logs.   The defendant admitted entering the land in dis-
pute and the removal of substantially the quantity of timber
claimed by the plaintiffs, but claimed title in himself both to the
land and timber.   At the time of the entry complained of the
plaintiffs owned lot 14, range 17, and the defendant owned lots
13 and 14, range 16, in said town.   Range 17 lies immediately
west of range 16 and the lots in each range are numbered con-
secutively from south to north; thus the plaintiffs' land abutted
upon that of the defendant, the southeast corner of their lot
being the southwest corner of defendant's lot 14, range 16.
There is one more lot in range 16 than in range 17, owing to
the irregular shape of the town.   This lot is numbered 15, range
16, and was formerly owned by one Mulligan and referred to at
the trial as the Mulligan lot.   It will be seen that plaintiffs'
land, which extended to the town line, abutted upon defendant's
lot 14, range 16, and the Mulligan lot.   The land in dispute is
a rectangular tract 76 rods in width and extending across the

entire width of lot 14, range 16.  Both parties claimed title to
the disputed tract, the plaintiffs as part of lot 14, range 17, and
the defendant as part of. lot 14, range 16; and the controversy
was as to the location of the division line between said lots.  The
location of the land in controversy is shown by the annexed
sketch and is the tract marked a, b, d, c.  Both parties derive
title to their respective lots from one Hanson E. Lewis who, as
early as June 1, 1887, owned the tract embracing lots 12, 13 and
14, range 16, and lots 12, 13 and 14, range 17.  The plaintiffs'
chain of title is as follows:

Deed from Hanson E. Lewis to John R. Sullivan, Aug. 13, 1891;
Deed from John R. Sullivan to George E. Young, July 9, 1894;
Deed from George E. Young to Gilbert & Pope, Nov. 24, 1898;
Deed from Thomas Gilbert to W. H. Pope, Dec. 1, 1899;
Deed from W. H. Pope to J. H. Silsby & Co., July 22, 1912.

The defendant acquired title to his lots Sept. 30, 1911, by
deed from Adelaide L. Lewis, Executrix of the will of Hanson E.
Lewis.

The defendant's evidence tended to show that the true
range line between ranges 16 and 17 is as shown in the above
sketch and that the land in dispute is part of lot 14, range 16.
The exceptions state, ''The plaintiffs claimed, and the evidence
tended to show, that the range line between ranges 16 and 17
as claimed by the defendant was run south of lot 12 and marked,
as testified by the defendant's surveyors, one hundred years
ago; that said range line north of the south corner of 12 had
no marks as old as the range line south of said corner; that
there were a few trees near that line on lot 12 with marks older
than the Webster survey of 1887 (hereinafter referred to) ; that ·
on lot 13 there were no old marks; that across lot 14 in range 17
there were no marked trees indicating a range line west of the
Mulligan line (also later referred to)   * * *  except the line
run by the defendant since this controversy began.''  It appears
from the exceptions that the defendant's evidence tended to
show several old marked trees near his claimed range line on
lot 12 and one old mark on lot 13, but no old marks on lot 14.

As we construe the exceptions the plaintiffs practically ad-
mitted that the original range line between ranges 16 and 17
south of lot 12 was marked upon the ground as claimed by the
defendant.   It also fairly appears that there was no testimony
of existing marks upon the ground indicating that that line had

been extended north between lots 14 in ranges 16 and 17 before this controversy arose. In this connection it appeared that plaintiffs owned lot 10, range 16, did not own the adjoining lot in range 17 and that they cut the timber on their. lot to the range line claimed by the defendant.

It appeared that one Lawrence Mulligan owned lot 15, range 16, from March 4, 1885 to April 5, 1902; that in June, 1887, shortly after Hanson E. Lewis acquired title to said six lots, he sent John Webster, a land surveyor, and one Anderson to run out and mark the boundaries of his land; that pursuant to their directions they ran and marked the south lines of lots 12 in both ranges and the east line of lots 12, 13 and 14, range 16; that they also ran and marked as part of the north line of said lots the line from the northeast corner of lot 14, range 16, westerly to the so-called "Mulligan corner," (marked d on the sketch), being the corner claimed by the plaintiffs as the northwest corner of lot 14, range 16, where they found a spruce tree marked as for a corner with new marks; that as the last work they did they ran and marked a line northerly from said corner to the Westfield line, being the line d-e on the sketch. This line the plaintiffs claim as part of the east line of their lot. The defendant's evidence tended to show that there was no marked line north from the Mulligan corner until the Webster survey, while the plaintiffs' evidence tended to show that it was run and marked earlier and that it "was marked when Mulligan purchased his lot in 1885." Whether we construe the exceptions to mean that the Mulligan line was run and marked at the time Mulligan purchased his lot, or that it had been marked at some previous time, it is evident that it was a comparatively recent marking.

In the fall of 1891, after he had purchased lot 14, range 17, John R. Sullivan caused a line to be run and marked south from the Mulligan corner a distance of 100 rods in the same course as the line that Webster had run in 1887 north from that corner, for the purpose of determining his south line. The line thus run by Sullivan extended across lot 14, range 16, and is the line plaintiffs claim as the division line between their lot and defendant's 14, range 16. It was unmarked before Sullivan caused the survey to be made. Referring to the Mulligan line and its extension south across lot 14, range 16, the exceptions state that the plaintiffs claimed that this was the true

east line of their lot, whether it was the true range line or not. The exceptions do not disclose any claim by plaintiffs that the original allotment of the town of Lowell located this line farther east than the line between ranges 16 and 17 south of lot 12. In view of what does appear we take the exceptions to mean that their claim in this regard was that this line had become the true east line of their lot by acquiescence or by adverse possession. The case is barren of any evidence that this line was ever established as a part of the range line, or as the true division line between lots 14 and 15, range 16, and lot 14, range 17, unless it had become such by one or other of these means. Plaintiffs say in their brief that whether their claimed line was the original range line was immaterial as the case stood. The court in its charge, which is before us, states the claims as follows: "The plaintiff and defendant disagree in regard to the lines of lot 14, range 17. The plaintiff claims that his lot, 14 in range 17, extends down east to what is called the Mulligan line. He claims that he has a right to have that extended down to the Mulligan line on account of having occupied to that line for so long a time that he can hold it by adverse possession, as it is called. He also claims that he has a right to that land down to the Mulligan line on the ground of what has been called here in the course of the trial as acquiescence to a line by the parties upon both sides, so it will be necessary for me to call your attention to these two claims and the grounds of them and the law bearing on them." Having thus stated plaintiffs' claim, it is to be presumed that the court has stated the whole claim. *Akeley* v. *Carpenter,* 87 Vt. 248, 251, 88 Atl. 897.

It is important to a proper understanding of the questions raised to consider first what, on the evidence, would be the location of the division line between lot 14, range 16, and lot 14, range 17, unaffected by acquiescence or adverse possession. It is a well known fact that the original proprietors of townships usually had them laid out into lots which they and their successors have been accustomed to sell by number without more particular description. Described thus, the lot lines, if surveyed and marked upon the ground, serve as monuments in fixing the boundaries. It was held in *Speller* v. *Scribner,* 36 Vt. 245, that the description of a lot by reference to its number is a description in legal effect according to the lines of such lot as surveyed and established in the original division of the town and is just

as definite, though not as particular, as it would be if the lines were given; that the description should receive the same construction and have the same legal effect in one case as in the other; and that such description was controlling and determined the extent of the land in controversy. See *Warren* v. *Pierce*, 6 Me. 9, 19 Am. Dec. 189.

The actual location upon the ground of original lot lines will control, if capable of being ascertained; but, when such lines have never been surveyed or, if surveyed, their location upon the ground cannot be ascertained, resort may be had to the lines of adjacent lots to determine their location. A range line will be presumed, in the absence of marks upon the ground, to be a straight line. Plaintiffs' claim that the location of the Mulligan line by acquiescence determined the location of the range line between lots 14 depends upon this assumption. There being no evidence on the ground of the original range line across the disputed territory, its location is determined *prima facie* by extending the range line from a point where its actual location can be ascertained. It follows that on the case made the plaintiffs failed to show that the disputed land was a part of lot 14, range 17, as originally allotted; while the defendant made at least a *prima facie* showing that it was within the limits of lot 14, range 16.

On the questions of acquiescence and adverse possession the plaintiffs' evidence tended to show that the Mulligan line was run by Mr. Webster acting for Mr. Lewis; that he made notes of his survey for Lewis; that after this controversy arose Webster furnished plaintiffs a sketch of his surveys made from his notes which showed the Mulligan line as a continuation of the range line between ranges 16 and 17 south of lot 12; that Webster then supposed that the Mulligan line was a continuation of such range line and that he so believed until after this suit was instituted and he went onto the land; when he concluded it was not; that the Mulligan line has been claimed and recognized as the east line of lot 14, range 17, separating it from lot 15, range 16, since some time prior to 1885; and that the continuation of the Mulligan line south from the Mulligan corner has been claimed by the owners of lot 14, range 17, except George E. Young, as the east line of that lot ever since Lewis conveyed it to Sullivan. As to the claim and occupancy of said Young, it appeared that he never went onto the lot,

never did nor caused to be done any acts of possession thereon and knew nothing about the boundaries thereof. It appeared that all the time Mulligan owned lot 15, range 16, he recognized the line claimed by the plaintiffs as the west line of his lot and never claimed nor occupied any land west thereof.

There was no evidence of actual occupation by Sullivan to the line run by him south from the Mulligan corner, except that he entered upon the land under his deed, caused the lines to be run and marked as before stated and cut timber on the land north of the Mulligan corner and between the Mulligan line and the range line. During all the time he owned the lot he claimed the line run by him south from the Mulligan corner as the east line of his lot. The fall Pope and Gilbert acquired title to the lot they erected a lumber camp on the disputed territory which they, and subsequently Pope alone, occupied while cutting the timber on their lot. Pope and Gilbert and Pope alone cut all the soft wood timber on lot 14, range 17 and down to the line run by Sullivan claiming that as the east line of the lot. Pope finished cutting in 1902. Thereafter he went onto the lot four or five times a year hunting and to see that no trespassing was committed. The lumber camp remained on the land and was claimed by Pope as his. So far as appears the next cutting on the disputed tract was in the fall in 1912 when the plaintiffs cut the logs sued for. In addition to cutting said logs the plaintiffs built roads on said lot and built a lumber camp on the disputed land. They also looked after the property to see that no trespassing was done. The exceptions state that there was no further evidence of occupation or possession of lot 14, range 17, and no evidence that any one ever entered upon, claimed to own, or exercised any rights in the territory in dispute adverse to the plaintiffs and their grantors or questioned the line run by Sullivan as the true line of lot 14, range 17, prior to the time defendant entered and removed the timber sued for, which was in the winter of 1912-13, except that during all the time after Lewis conveyed the lot to Sullivan the defendant and his grantors held the record title and claimed to own lots 13 and 14, range 16.

On this evidence the plaintiffs failed to establish their claimed line across lot 14, range 16, by agreement or acquiescence. Their evidence tended to show that the line north from the Mulligan corner across lot 15, range 16, had been recognized

by Mulligan and his grantees under circumstances and for a sufficient length of time to establish that line as the division line between their lot and the Mulligan lot. But acquiescence by Mulligan and his grantees, who are not in defendant's chain of title, cannot affect the defendant's rights in the adjoining lot. The most that could be claimed for the evidence of acquiescence in the Mulligan line would be that it had a tendency to prove that the claimed line coincided with original range line. We are not called upon to decide whether it had that tendency, for, as we have seen, the plaintiffs were not relying upon the claim that the Mulligan line and the line run by Sullivan coincided with the original range line. At the most the Mulligan line was shown to be a new boundary established by acquiescence and not the original boundary of plaintiffs' lot. There was no evidence that Lewis knew anything of the line run by Sullivan. It follows that he could not have recognized it as the west line of his lot 14, range 16. Mutual recognition is requisite to establish a line by acquiescence. *Sawyer* v. *Coolidge,* 34 Vt. 303. And so are all our cases. Knowledge is the *sine qua non* of acquiescence. It was said in *Pence* v. *Langdon,* 99 U. S. 578, 581, 25 L. ed. 420, that there cannot be acquiescence without knowledge, though one cannot wilfully shut his eyes to what he might readily and ought to have known; that there must be knowledge of facts which will enable the party to take effectual action— nothing short of this will do. While there might be circumstances in which the court would impute knowledge, there is nothing in the evidence before us to justify such action. Plaintiffs' counsel admit that there was no evidence of acquiescence in the line on lot 14, range 16, unless Lewis' failure to object to the cutting by Pope and Gilbert and Pope alone furnishes a basis for such an inference. Without evidence that Lewis knew of the cutting, and there is none, this would not warrant the inference. Lewis lived at St. Albans and, so far as appears, was never on the land. Besides, if we were to presume that he knew of such cutting, the necessary time had not elapsed to establish the line by acquiescence.

The theory of the plaintiffs on this branch of the case was that Lewis, being the owner of the whole tract, by surveying and marking the line north from the Mulligan corner, established the line between lot 14, range 16, and lot 14, range 17; that recognition by Lewis of the Mulligan line as the west line of lot

15, range 16, was a recognition of that line extended south as the west line of lot 14, range 16; and that silence on his part for 15 years coupled with the claim of Sullivan and his grantees to the Mulligan line and its extension south across lot 14, range 16, established that line by acquiescence. The court below seems to have adopted this view. The law establishing boundaries by acquiescence does not go to this length. Carried to its logical conclusion it would compel a holding that if, by mistake Lewis recognized the Mulligan line as part of the range line, he, by that means, recognized its extension south across his whole tract, though not surveyed and marked, as the range line. It would follow that his grantee of lot 12, range 17, could, without Lewis' knowledge, by marking a line across lot 12, range 16, in range with the Mulligan line and claiming it as his east line for 15 years make the new line the division line by acquiescence, despite the fact that the true range line was plainly marked upon the ground and may in fact have been relied upon by Lewis as the division line. The doctrine of acquiescence in boundary lines of necessity implies what amounts to actual knowledge of their existence upon the ground as marking the limits of one's ownership. See *Palmer* v. *Osborne,* 115 Ia. 714, 87 N. W. 712; *Connell* v. *Clifford,* 39 Colo. 121, 88 Pac. 850; *Fitzimons* v. *Atherton,* 162 Cal. 630, 124 Pac. 250.

Nor do the plaintiffs make a case of adverse possession. Pope and Gilbert succeeded by Pope alone were the first in the plaintiffs' chain of title whose occupation of the disputed territory was of the character to ripen into title by prescription. Pope and Gilbert acquired title Nov. 24, 1898, and the writ was served May 22, 1913; so their occupancy tacked to that of the plaintiffs would fall short of the necessary 15 years. Their predecessor Young was never in actual possession of any part of the lot and knew nothing of its boundaries. His deed gave him constructive possession only to the true range line. Plaintiffs' claim is that Sullivan had constructive possession of all the land within the spotted line indicating the east boundary of lot 14, range 17; that this possession went with his deed to Young and continued down to the plaintiffs, because there was no evidence of an abandonment of that possession and because their constructive possession under color of title was never disturbed, interfered with nor questioned by anyone. The assumption that Sullivan had constructive possession of the dis-
18

puted territory is not supported by the evidence. While he claimed to the Mulligan line and the line run by him south, which was plainly marked, and was in actual possession of the land thus enclosed outside the disputed tract, he did not have constructive possession of the disputed tract. The defendant's grantor was claiming the whole of lot 14, range 16, under his deed and so had constructive possession thereof. Having the title, he would not be disseized by anything short of actual adverse possession. *Hodges* v. *Eddy,* 38 Vt. 327; *Jakeway* v. *Barrett,* 38 Vt. 316; *Rice* v. *Chase,* 74 Vt. 362, 52 Atl. 967; *Davenport* v. *Newton,* 71 Vt. 11, 42 Atl. 1087; *Chase* v. *Eddy,* 88 Vt. 235, 92 Atl. 99. While one may retain possession once acquired by intention merely, if uninterrupted, intention or claim of ownership is not sufficient for the acquisition of possession. *Webb* v. *Richardson,* 42 Vt. 474. By causing the line south from the Mulligan corner to be run and marked Sullivan did not take actual possession of the disputed tract. Such act would not interrupt the constructive possession of defendant's grantor. *Oatman* v. *Fowler,* 43 Vt. 462; *Kidder* v. *Kennedy,* 43 Vt. 717; *Paine & Slocum* v. *Hutchins,* 49 Vt. 314; *Rice* v. *Chase,* 74 Vt. 362, 367, 52 Atl. 967. Moreover, Sullivan was holding under paper title which limited his constructive possession to the bounds of lot 14, range 17. *Chase* v. *Eddy,* 88 Vt. 235, 92 Atl. 99; *Rice* v. *Chase,* 74 Vt. 362, 366, 52 Atl. 967. And besides, if all the elements of adverse possession in Sullivan had been present, it was interrupted during the time Young owned the lot and could not be resorted to to help out the possession of Pope and Gilbert and their grantees.

These holdings dispose of all the questions raised by the exceptions to the charge and exceptions to the court's refusal to charge as requested that are of sufficient importance to merit attention. We do not deem it necessary to consider them *seriatim.* Some of the exceptions will have to be sustained. As the case must go back for retrial, we examine the questions raised by exceptions to the admission and exclusion of evidence.

1. Against objection that it was immaterial plaintiffs were permitted to show by John R. Sullivan that after he ran and marked the line across lot 14, range 16, from the Mulligan corner he claimed that line as the west line of his lot. The testimony was relevant to the claims made by plaintiffs, but their failure to introduce evidence tending to show either ac-

quiescence in the line by the adjoining owner or adverse possession of the disputed tract by Sullivan rendered it immaterial.

2. The same witness was permitted to testify under exception that he pointed out the Mulligan line to one Sylvester whom he hired to cut timber for him, that Sylvester cut to that line and that witness claimed and occupied to it. That Sullivan claimed and occupied to the Mulligan line and that Sylvester under his employment cut to that line would, as we have seen, be immaterial on any issue in the case. The fact that he pointed out that line to Sylvester, though evidence of his claim, becomes immaterial as the claim is immaterial. See *Lawrie* v. *Silsby*, 76 Vt. 245, 56 Atl. 1106, 104 Am. St. Rep. 927.

3. The same witness was also permitted to testify that he claimed and occupied that part of lot 15, range 16, west of the Mulligan line as a part of lot 14, range 17. This evidence was immaterial for the reason last stated.

4. The same witness was asked on cross-examination, referring to the line run by him south from the Mulligan corner and claimed as his east line:

Q. You found you were mistaken, did you not? The question was excluded. It was the witness's claim and acts while owner and in possession of the lot that was material. The question was unlimited as to time. If at a subsequent time he became satisfied that his claim was unfounded, it would not affect rights depending upon such claim. It was not error to exclude the question.

5. This exception is expressly waived.

6. One Stetson called by plaintiff testified on direct-examination that eighteen years before he cut for the Gilberts on their lot 13, range 17, that the Gilberts showed him as their east line a line of spotted trees, marked north and south, which was a continuation of the line south from the Mulligan corner. Referring to such line, the plaintiffs were permitted to show by the witness that the Gilberts cut the spruce, as far east as there was spruce, up to that line in the vicinity of a certain shanty which witness occupied while doing the work. There was nothing to show when or by whom this line was marked across lot 13, range 16, nor was there any claim that it was marked for the range line. It is urged that, as Lewis was then the owner of lots 13 and 14, range 16, and made no objection to the cutting, this evidence had a tendency to show that the line claimed by the

plaintiffs was understood and recognized by Lewis, the common grantor, as the line between lot 14, range 16, and lot 14, range 17. But it nowhere appears that Lewis knew of the existence of the line to which the Gilberts claimed nor of their cutting with reference to that line. The attempt being to establish the line by acquiescence the evidence had no tendency to support the claim in the absence of a showing that Lewis had the requisite knowledge.

7, 8. These exceptions relate to testimony tending to show that Mulligan acquiesced in the so-called Mulligan line as the west line of his lot. It is evident from what we have already said that this evidence was immaterial to the issues being tried.

9. Thomas Gilbert was permitted to testify that just before he and Pope purchased lot 14, range 17, from Young, Sullivan, Young's grantor, pointed out to Pope and Gilbert the line claimed by the plaintiffs as the east line of the lot. Plaintiffs' claim below was that the evidence tended to show that Young had made Sullivan his agent to point out the boundaries of the lot, and that the act of Sullivan in that regard was in law the act of Young the then owner of the lot. They do not insist upon that claim here but say that the challenged evidence tended to show the claim made by Young as to the bounds of the land and that he was claiming the same bounds that Sullivan did. In view of the fact that Young was never upon the lot and knew nothing about the boundaries, which excludes the idea that he was consciously claiming under his deed to the line made by Sullivan, we fail to see how the fact that he referred Pope and Gilbert to Sullivan has any such tendency as the plaintiffs claim. The abandonment of the claim made below makes further consideration of the question unnecessary. Regarded as a declaration of Sullivan, it would be inadmissible because made after parting with title. *Bragg* v. *Laraway,* 65 Vt. 673, 27 Atl. 492.

10, 11. Plaintiffs were permitted to show by Pope, their immediate grantor, that just before he deeded to them he pointed out to plaintiffs as the east line of lot 14, range 17, the line they are seeking to establish. This would not be competent as evidence of the location of the range line across the disputed territory but would be admissible on the question of adverse possession, if that were in the case, as tending to connect the

claim and occupation of the witness with that of the plaintiffs. *Swerdferger* v. *Hopkins,* 67 Vt. 136, 31 Atl. 153.

12.   Defendant offered to show by John Webster, who made the survey already referred to, that at the time the line was run from the Mulligan corner north to the Westfield line neither he nor any one of his party had any notion they were running the range line; that they ran it because Mr. Anderson desired to have it run on the same course as the range line for purposes of his own.   To the exclusion of the offered evidence the defendant saved an exception.   The exceptions show that Anderson represented Lewis in the survey that was being made.   The offered evidence should have been received.   Plaintiffs were claiming that the line to which the offer relates was run by Lewis' agents as part of the east line of lot 14, range 17, and fixed the location of the whole east line of the lot.   The intent with which this line was run had an important bearing upon the claims the plaintiffs were making.   The charge of the court makes it clear that the defendant was prejudiced by the ruling.   The question as to what Webster and the men with him understood they were doing when they ran the line north from the Mulligan corner was directly submitted to the jury on the question of acquiescence.   The natural inference would be that what Webster did by way of surveys was done in furtherance of his purpose in going upon the land, viz.: to survey out the bounds of the tract. To deny the defendant an opportunity to meet this inference by showing the real purpose for running the line in question was manifest error.

*Judgment reversed and cause remanded.*